## DALLAS ANESTHESIOLOGY ASSOCIATES, P.A., Appellant

### v.

## TEXAS ANESTHESIA GROUP, P.A., Xiao–En Fang, Thaddeus Ashmore, and Robert Slagle, Appellees.

No. 05–05–01332–CV.

Court of Appeals of Texas, Dallas.

May 1, 2006.

Dan Hartsfield, Karen Elizabeth Griffin and Jennifer M. Trulock, Baker & Botts, L.L.P., Dallas, for Appellant.

Gary Cruciani, Mckool Smith, P.C., Dallas, for Appellee.

Before Justices WRIGHT, LANG, and LANG–MIERS.

## OPINION

Opinion by Justice LANG.

Dallas Anesthesiology Associates, P.A., appeals the trial court's interlocutory order denying its application for a temporary injunction against Texas Anesthesia Group, P.A., Dr. Xiao–En Fang, Dr. Thaddeus Ashmore, and Dr. Robert Slagle (collectively Texas Anesthesia). In its sole issue on appeal, Dallas Anesthesiology argues the trial court abused its discretion when it denied Dallas Anesthesiology's application for injunctive relief.

We conclude the trial court did not abuse its discretion. The trial court's interlocutory order denying Dallas Anesthesiology's application for a temporary injunction is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Dallas Anesthesiology sued Texas Anesthesia Group and its principals, Dr. Fang, Dr. Ashmore, and Dr. Slagle. It alleged that: (1) Drs. Fang, Ashmore, and Slagle breached their duty of loyalty and fiduciary duties; and (2) Texas Anesthesia Group and the doctors misappropriated confidential information, time, labor, skill, and money, engaged in unfair competition, tortiously interfered with Dallas Anesthesiology's business relationships and other employees' duty of loyalty, and were involved in a conspiracy. In particular, Dallas Anesthesiology alleged Drs. Fang, Ashmore, and Slagle secretly decided to form a competing professional medical association, solicited its associate anesthesiologists, and used its confidential business information to solicit its highest income producing surgeons to follow them to their new practice. It also alleged that, after Drs. Fang, Ashmore, and Slagle resigned, at least two groups of surgeons cancelled all of their surgeries scheduled with Dallas Anesthesiology and other surgeons indicated they

would no longer be using Dallas Anesthesiology for anesthesia services.

Also, Dallas Anesthesiology requested a temporary restraining order and applied for injunctive relief prohibiting Texas Anesthesia from doing the following:

1. misappropriating [Dallas Anesthesiology's] Confidential Information;

2. soliciting or contacting on behalf of [Texas Anesthesia Group] or otherwise performing professional services for those surgeon clients of [Dallas Anesthesiology] who [Drs. Fang, Ashmore, or Slagle] solicited, contacted, or otherwise attempted to divert to [Texas Anesthesia Group] while employed by [Dallas Anesthesiology] and on or before July 17, 2005; [1]

3. soliciting or contacting on behalf of [Texas Anesthesia Group] or otherwise employing or offering to employ any partner, associate, part-time associate and/or prospective associate of [Dallas Anesthesiology] who [Drs. Fang, Ashmore, or Slagle] solicited, contacted or otherwise attempted to persuade to leave his or her employment or association with [Dallas Anesthesiology] in order to join [Texas Anesthesia Group] while employed by [Dallas Anesthesiology] and on or before July 17, 2005;

4. violating their continuing fiduciary duties to [Dallas Anesthesiology];

5. interfering with the duty of loyalty owed to [Dallas Anesthesiology] by its employees and members; and

6. tortiously interfering with [Dallas Anesthesiology's] existing and prospective business relations by using, directly or indirectly, [Dallas An-

esthesiology's] Confidential Information to its competitive disadvantage.

The trial court granted a temporary restraining order and set the matter for a hearing. The temporary restraining order was later modified to prohibit Texas Anesthesia from soliciting or communicating with surgeons who scheduled procedures with Dallas Anesthesiology from March 1, 2005 to July 17, 2005, but permitted any surgeon to independently or voluntarily schedule future procedures with Texas Anesthesia. However, the trial court later dissolved the modified temporary restraining order and issued an order only prohibiting Texas Anesthesia from reproducing or using certain documents.

Texas Anesthesia answered and filed counterclaims against Dallas Anesthesiology and third party claims against Dr. Matthew Banks, Dr. Paul Hanslik, Dr. Robert Samuelson, Dr. Tom Schultz, Dr. John Humphrey, Dr. Lawrence Diana, Dr. Doug Johnson, Dr. Jean Wall, Dr. Kevan Wong, Dr. Maureen Luby, Dr. Paul Barton, Dr. Kirby Swift, and Dr. Jean Waddle alleging: (1) against Dallas Anesthesiology and the individual doctors, wrongful injunction, malicious prosecution, payday law claims, theft of property, quantum meruit, tortious interference, and conspiracy; and (2) against Dallas Anesthesiology, negligent misrepresentation and mismanagement, and promissory estoppel. Also, Texas Anesthesia sought a declaratory judgment and an accounting or audit of Dallas Anesthesiology's books and records.

After a two-day hearing on Dallas Anesthesiology's application for a temporary injunction, the trial court denied the application. The trial court's order states:

---

1. Dallas Anesthesiology later limited this requested injunctive term to seven specific surgeons.

On September 1 and 2, 2005, the Court held an evidentiary hearing on [Dallas Anesthesiology's] Application for Temporary Injunction. The Court, having considered the evidence and the arguments of counsel, finds that [Dallas Anesthesiology] has failed to meet its burden of proving that it is entitled to a temporary injunction. It is therefore, ORDERED that [Dallas Anesthesiology's] Application for Temporary Injunction is DENIED.

Dallas Anesthesiology requested the trial court to make findings of fact and conclusions of law, but the trial court declined.

## II. OBJECTIONS AND MOTION TO STRIKE STATEMENT OF FACTS

In its reply brief, Dallas Anesthesiology objects to and moves the Court to strike Texas Anesthesia's statement of facts. Specifically, Dallas Anesthesiology argues Texas Anesthesia's statement of facts cites to pleadings, motions, and hearsay affidavits the trial court refused to admit during the temporary injunction hearing. Texas Anesthesia did not respond to the objections or motion.

Texas Rule of Appellate Procedure 38 requires an appellee's brief to "state concisely and without argument the facts pertinent to the issues or points presented." See TEX.R.APP. P. 38.2(a)(1), 38.1(f). Also, the statement of facts must be supported by record references. TEX.R.APP. P. 38.1(f). Substantial compliance with Texas Rule of Appellate Procedure 38 is sufficient. See TEX.R.APP. P. 38.9. However, if Texas Rule of Appellate Procedure 38 has been flagrantly violated, the Court may require a brief to be amended, supplemented, or redrawn. See id. If another noncomplying brief is filed, the Court may strike the brief, prohibit the party from filing another brief, and proceed as if that party had failed to file a brief. Id.

In its statement of facts, Texas Anesthesia cites to both the clerk's and reporter's records. Dallas Anesthesiology's objections and motion to strike are not accompanied by any authority to support the objections or the relief requested. Accordingly, based on this record, we conclude Texas Anesthesia has substantially complied with Texas Rule of Appellate Procedure 38.

## III. DENIAL OF TEMPORARY INJUNCTION

In its sole issue on appeal, Dallas Anesthesiology argues the trial court abused its discretion when it denied Dallas Anesthesiology's application for injunctive relief. Specifically, Dallas Anesthesiology argues the trial court had no discretion to deny it injunctive relief because: (1) it proved Texas Anesthesia misappropriated confidential information, breached fiduciary duties, and tortiously interfered with its relationship with its employees and clients; and (2) it has no adequate remedy at law because it cannot be adequately compensated for its loss of reputation, relationships with referring physicians, employee morale, ability to recruit referring physicians and anesthesiologists, and confidence in its stability and continued existence. Texas Anesthesia responds that the trial court did not abuse its discretion because the trial court's order was supported by some evidence, there was a conflict in the evidence as to the issues before the trial court, and Dallas Anesthesiology failed to prove a probable right to recover on its claims or irreparable harm.

### A. Standard of Review

Section 51.014(a)(4) of the Texas Civil Practice and Remedies Code permits an interlocutory appeal of a district court's grant or denial of an application for a

temporary injunction. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(4) (Vernon Supp.2005). The decision to grant or deny an application for a temporary injunction is within the sound discretion of the trial court. *See, e.g., Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex.2002); *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993) (per curiam); *Wilson N. Jones Mem'l Hosp. v. Huff*, 188 S.W.3d 215, 218 (Tex.App.-Dallas, 2003, pet. denied) (published, but not yet reported in S.W.3d). An appellate court will not reverse a trial court's decision to deny an application for a temporary injunction absent an abuse of discretion. *See, e.g., Butnaru*, 84 S.W.3d at 204; *Walling*, 863 S.W.2d at 58; *Wilson N. Jones Mem'l Hosp.*, 188 S.W.3d at 218. An appellate court will not substitute its judgment for that of the trial court. *See e.g., Butnaru*, 84 S.W.3d at 204; *Wilson N. Jones Mem'l Hosp.*, 188 S.W.3d at 218. Also, an appellate court draws all legitimate inferences from the evidence in the light most favorable to the trial court's order granting or denying the application for a temporary injunction. *See, e.g., Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 883 (Tex.App.-Dallas 2003, no pet.); *In re Marriage of Beach*, 97 S.W.3d 706, 708 (Tex.App.-Dallas 2003, no pet.); *see also Loye v. Travelhost, Inc.*, 156 S.W.3d 615, 619 (Tex.App.-Dallas 2004, no pet.) (op. on reh'g); *Strickland v. Medtronic, Inc.*, 97 S.W.3d 835, 837 (Tex.App.-Dallas 2003, pet. dism'd w.o.j.); *Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 551–52 (Tex.App.-Dallas 1993, no writ).

When a trial court denies an application for a temporary injunction, it abuses its discretion if its decision is so arbitrary as to exceed the bounds of reasonable discretion. *See Wilson N. Jones Mem'l Hosp.*, 188 S.W.3d at 218; *Tom James of Dallas*, 109 S.W.3d at 883; *Marriage of Beach*, 97 S.W.3d at 708. A trial court abuses its discretion when it misapplies the law to established facts or when the evidence does not reasonably support its determination regarding the existence of a probable right of recovery or a probable injury. *See Tom James of Dallas*, 109 S.W.3d at 883. However, a trial court does not abuse its discretion in denying an application for a temporary injunction based on its holding that the applicant failed to prove one of the requirements for a temporary injunction. *See Wilson N. Jones Mem'l Hosp.*, 188 S.W.3d at 218; *Tom James of Dallas*, 109 S.W.3d at 889. Also, there is no abuse of discretion when a trial court bases its decision on conflicting evidence, that is there is some evidence that reasonably supports its decision. *See Butnaru*, 84 S.W.3d at 211 (some evidence); *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978) (conflicting evidence); *C.S.C.S., Inc. v. Carter*, 129 S.W.3d 584, 593 (Tex.App.-Dallas 2003, no pet.) (conflicting evidence and some evidence); *Tom James of Dallas*, 109 S.W.3d at 883, 889 (conflicting evidence); *see also Loye*, 156 S.W.3d at 619 (conflicting evidence).

### B. Applicable Law

A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Butnaru*, 84 S.W.3d at 204; *Walling*, 863 S.W.2d at 57; *Wilson N. Jones Mem'l Hosp.*, 188 S.W.3d at 218. For a temporary injunction to issue, the applicant must plead and prove: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204; *Walling*, 863 S.W.2d at 57; *Wilson N. Jones Mem'l Hosp.*, 188 S.W.3d at 218; *see* TEX. CIV. PRAC. & REM.CODE ANN. § 65.011 (Vernon 1997).

To establish a probable right to the relief sought, an applicant is re-

quired to allege a cause of action and offer evidence that tends to support the right to recover on the merits. *See Walling,* 863 S.W.2d at 58. An applicant is not required to show he will prevail at the final trial because the ultimate merits of the case are not before the trial court. *See Walling,* 863 S.W.2d at 58; *Tom James of Dallas,* 109 S.W.3d at 884. A probable right to recovery may be proven by alleging the existence of a right and presenting evidence tending to show that right is being denied. *Bureaucracy Online, Inc. v. Schiller,* 145 S.W.3d 826, 829 (Tex.App.-Dallas 2004, no pet.).

 For purposes of a temporary injunction, an injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru,* 84 S.W.3d at 204; *Wilson N. Jones Mem'l Hosp.,* 188 S.W.3d at 218. An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief. *Wilson N. Jones Mem'l Hosp.,* 188 S.W.3d at 218. The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru,* 84 S.W.3d at 204; *Wilson N. Jones Mem'l Hosp.,* 188 S.W.3d at 218. The status quo is defined as, "the last, actual, peaceable, non-contested status which preceded the pending controversy." *Pierce v. State,* 184 S.W.3d 303, 308 (Tex. App.-Dallas 2005, no pet. h.) (quoting *In re Newton,* 146 S.W.3d 648, 651 (Tex.2004) (orig.proceeding)).

 The party applying for a temporary injunction has the burden of production, which is the burden of offering some evidence that establishes a probable right to recover and a probable interim injury. *See Wyly v. Preservation Dallas,* 165 S.W.3d 460, 465 (Tex.App.-Dallas 2005, no

pet.). If an applicant does not discharge his burden, he is not entitled to such extraordinary relief. *Wyly,* 165 S.W.3d at 465.

### C. Application of the Law to the Facts

 At the temporary injunction hearing, Dallas Anesthesiology offered evidence in support of its claim for wrongful misappropriation of confidential information. To counter Dallas Anesthesiology's evidence, Texas Anesthesia offered evidence that: (1) only Dallas Anesthesiology's patient information is confidential; (2) none of the lists or documents were marked confidential; (3) the documents were distributed at prior Dallas Anesthesiology meetings to partners and associates and the documents were not retrieved at the end of the meetings; (4) when recruiting other doctors on behalf of Dallas Anesthesiology, Dr. Ashmore did not ask the recruits to sign a confidentiality agreement and shared information relating to the surgeons Dallas Anesthesiology worked with, which surgeons they preferred to work with, who the most important clients were, and Dallas Anesthesiology's annual income and total revenues; (5) after Drs. Fang, Ashmore, and Slagle gave their notice, but before they left Dallas Anesthesiology, they were not told to return the documents or any confidential information; (6) Dr. Ashmore requested the insurance payor list and referring physician information so he could prepare the treasurer's report for Dallas Anesthesiology; and (7) Dr. Ashmore produced the list in response to Dallas Anesthesiology's request and he did not retain a copy.

Also, Dallas Anesthesiology offered evidence in support of its claim of breach of fiduciary duties. To counter Dallas Anesthesiology's evidence, Texas Anesthesia offered evidence that: (1) Dr. Slagle had not been an officer of Dallas Anesthesiolo-

898

gy since 2002; (2) officers and directors are normally elected in January or February, but only officers were elected at the 2005 annual meeting; (3) the annual statement filed with the Texas Secretary of State for 2005 did not list any directors, only officers; (4) some of the director positions are questionable, e.g., director of library because there is currently no library; and (5) Dr. Ashmore did not use the Dallas Anesthesiology payor list in connection with Texas Anesthesia Group.

Finally, Dallas Anesthesiology offered evidence in support of its claim of tortious interference. To counter Dallas Anesthesiology's evidence, Texas Anesthesia offered evidence that: (1) Dr. Rathjen asked Drs. Fang, Ashmore, and Slagle to form their own group so they did not need to solicit his business; (2) some surgeons had expressed a preference to work with certain anesthesiologists or stated they would not work with specific anesthesiologists at Dallas Anesthesiology; (3) there were no contracts between Dallas Anesthesiology and any of the surgeons and the surgeons were free to cease doing business with Dallas Anesthesiology at any time; (4) Dr. Ashmore was successful in attracting surgeons to Texas Anesthesia Group because of working relationships, not Dallas Anesthesiology's reports; (5) Dr. Fang did not tell Dr. Waddle they had recruited surgeons, she inferred this because he told her there were a handful of surgeons who would be going with him and she presumed this meant he had conversations with those surgeons; (6) Dr. Slagle never made a verbal or written offer of employment to Drs. McCarter and Mejia, or told them to break their employment contracts; (7) Dr. McCarter stated that Drs. Fang, Ashmore, and Slagle never suggested to him or encouraged him to violate his employment contract with Dallas Anesthesiology; and (8) no anesthesiologist employed by Dallas Anesthesiology left Dallas An-

esthesiology to join Texas Anesthesia and there are no claims that they breached their contracts with Dallas Anesthesiology.

For a temporary injunction to issue, Dallas Anesthesiology was required to plead and prove: (1) a cause of action against Texas Anesthesia; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *See Butnaru,* 84 S.W.3d at 204; *Walling,* 863 S.W.2d at 57; *Wilson N. Jones Mem'l Hosp.,* 188 S.W.3d at 218. If Dallas Anesthesiology's burden is not discharged as to any one element, it is not entitled to extraordinary relief. *See Wyly,* 165 S.W.3d at 465. We may not conclude a trial court abused its discretion by denying an application for a temporary injunction if there was conflicting evidence, that is there was some evidence to support the trial court's decision. *See Butnaru,* 84 S.W.3d at 211; *Davis,* 571 S.W.2d at 862; *C.S.C.S.,* 129 S.W.3d at 593; *Tom James of Dallas,* 109 S.W.3d at 883, 889; *see also Loye,* 156 S.W.3d at 619. On this record, we conclude there was conflicting evidence, that is there was some evidence to support the trial court's decision to deny the application for a temporary injunction implicitly because Dallas Anesthesiology failed to prove a probable right to the relief sought. Accordingly, we conclude the trial court did not abuse its discretion.

Dallas Anesthesiology's sole issue is decided against it.

## IV. CONCLUSION

The trial court did not abuse its discretion when it denied Dallas Anesthesiology's application for a temporary injunction. The trial court's interlocutory order denying Dallas Anesthesiology's application for a temporary injunction is affirmed.