**ALLIED CAPITAL PARTNERS, LP, Appellant,**

v.

**PROCEED TECHNICAL RESOURCES, INC. and Edward R. Garcia, Appellees.**

No. 05–09–00707–CV.

Court of Appeals of Texas, Dallas.

April 27, 2010.

---

9. Appellants apparently discovered this information after this lawsuit was filed.

Mark Douglas Cronenwett, Higier Allen & Lautin, PC, Addison, TX, Jonathan Clark LaMendola, William D. Cobb, Jr., Carrie Johnson Phaneuf, Cobb Martinez Woodward PLLC, Dallas, TX, for Appellant.

Dan S. Boyd, The Boyd Law Firm, P.C., Dean Fuller, Dallas, TX, for Appellee.

Before Justices MOSELEY, RICHTER, and FRANCIS.

## OPINION

Opinion By Justice MOSELEY.

This is an interlocutory appeal from a temporary injunction. Allied Capital Partners, LP entered into a factoring agreement with Proceed Technical Resources, Inc. (PTRI), guaranteed by Edward R. Garcia. The trial court enjoined Allied from contacting customers of PTRI from whom Allied claimed a security interest in accounts receivable owed by the customers to PTRI for the purpose of enforcing the security interest or requesting payment from the customers. The temporary injunction also prohibited Allied from indicating to PTRI's customers that the parties were in litigation about the ownership of or interest in those accounts receivable.

In four issues, Allied contends the trial court abused its discretion by determining PTRI showed a probable right of recovery on its claims and by issuing the temporary injunction. We agree. We reverse the trial court's orders granting and extending the temporary injunction, vacate the temporary injunction, and remand for further proceedings.

## BACKGROUND FACTS

Allied and PTRI entered into a factoring agreement on October 31, 2008. Under the terms of the factoring agreement, PTRI could list which accounts it wanted to offer to Allied for factoring. Allied, which was not obligated to purchase any account PTRI offered to sell, would then either accept PTRI's offer by paying the purchase price for all the listed accounts, less the reserve amount determined by Allied under the agreement, or mark out accounts it did not want to purchase and pay the purchase price for the remaining accounts, again less the reserve amount.

Allied agreed to provide PTRI a monthly statement of transactions affecting the reserve account. In general, PTRI warranted that all the accounts it sold to Allied would be valid, would be paid when due, and would not be disputed by the account debtor. If an account Allied purchased was not paid within a certain period of time or if PTRI breached its warranties, PTRI was required to repurchase the account.

To secure all of PTRI's obligations and liabilities to Allied, the factoring agreement granted Allied a security interest in all of PTRI's existing and later arising accounts and other assets as collateral. The factoring agreement stated it was the entire understanding between the parties and could not be modified except by a writing signed by both parties.

It is undisputed that, at PTRI's request, Allied paid over $550,000 to buy out PTRI's former factoring company, American Receivable.[1] It is also undisputed that Allied purchased about $270,000 of PTRI's accounts receivable in November. In December, PTRI submitted additional invoices for factoring. PTRI contends Allied refused to either pay cash for or reject these invoices, breaching the agreement. Allied claims it bought the December invoices, but applied all but $5000 of the purchase price to the reserve account under the factoring agreement because older factored invoices were past due.

Allied sued PTRI and Garcia in April 2009 to collect over $634,000 in unpaid factored invoices. Allied alleged PTRI breached its warranties under the factoring agreement and failed to repurchase unpaid accounts as required by the factoring agreement.

In May 2009, Allied contacted an account debtor of PTRI and requested it pay the account directly to Allied. PTRI then filed a counterclaim and request for a temporary restraining order and temporary injunction to prevent Allied from contacting its account debtors. Allied opposed the motion, asserting that under the terms of the factoring agreement it had a security interest in all of PTRI's accounts—even those not purchased by Allied. After a hearing, the trial court granted the temporary injunction.

## STANDARD OF REVIEW

 We apply well-established standards of review to the granting or denial of

---

1. Although the buyout of American Receivable is not disputed, PTRI argued in the trial court that the factoring agreement did not cover the buyout. This argument goes to the merits, and its resolution does not impact any issue raised on appeal. Thus, we do not address it further.

a temporary injunction. *See Bank of Texas, N.A. v. Gaubert,* 286 S.W.3d 546, 552 (Tex.App.-Dallas 2009, pet. dism'd w.o.j.). We review the trial court's action for an abuse of discretion. *Id.* A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex.2002). The applicant must show a cause of action against the other party, a probable right to the relief sought, and a probable, imminent, and irreparable injury if the injunction does not issue. *Id.* We do not reach the merits of the dispute on interlocutory appeal and will not assume the evidence presented at the temporary injunction hearing will be the same as the evidence developed at a full trial on the merits. *See Tom James of Dallas, Inc. v. Cobb,* 109 S.W.3d 877, 884–85 (Tex.App.-Dallas 2003, no pet.). As we have recognized, the appeal of a temporary injunction should not be cause for trial delay and trial courts should proceed expeditiously to the full consideration of the merits to reduce the need for interlocutory appeals. *Hiss v. Great N. Am. Companies, Inc.,* 871 S.W.2d 218, 219 (Tex.App.-Dallas 1993, no writ).

## ANALYSIS

Allied contends PTRI failed to show a probable right of recovery because Allied performed under the terms of the factoring agreement and exercised its rights under that agreement. PTRI contends Allied committed a material breach of the factoring agreement by: (1) failing to either purchase or reject the December schedules of invoices; (2) keeping about $14,000 from non-factored accounts collected by Allied; and (3) failing to provide PTRI with a monthly accounting of the reserve account maintained by Allied under the factoring agreement. As a result, PTRI argues its performance under the agreement is discharged or excused.

■ "It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.,* 134 S.W.3d 195, 196 (Tex.2004) (per curiam); *see also Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co.,* 288 S.W.3d 374, 378 (Tex.2009). PTRI relies on this general principle to support the temporary injunction, arguing that once Allied committed a material breach PTRI was excused from further performance under the factoring agreement. PTRI, however, fails to analyze the materiality of alleged breaches or to recognize the limitations on the application of the general rule.

■ The supreme court follows the restatement of contracts in determining the materiality of a breach. *See Mustang Pipeline,* 134 S.W.3d at 196; RESTATEMENT (SECOND) OF CONTRACTS § 241, 242 (1981). Some of the significant circumstances considered in determining whether a breach is material include the extent to which the injured party will be deprived of the benefit which he reasonably expected, the extent to which he can be adequately compensated for the loss of that benefit, and the extent to which the breaching party will suffer forfeiture. RESTATEMENT (SECOND) OF CONTRACTS § 241.[2] If, considering

---

2. Other circumstances include:
 (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of the circumstances including any reasonable assurances;
 (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.
RESTATEMENT (SECOND) OF CONTRACTS § 241.

these circumstances, a party has materially breached the contract, the other party is discharged from further performance.

However, a material breach will not discharge an obligation of the non-breaching party that arose before the alleged breach. Where the parties promise to exchange performances, it is a condition of each party's duty to render performance that there be no uncured material failure by the other party to render any such performance due at an earlier time. RESTATEMENT (SECOND) OF CONTRACTS § 237. Parties sometimes make several promises to exchange performances under a single contract. Under section 237, "only duties with respect to the performances to be exchanged under the particular exchange of promises are affected by a failure of one of those performances.... [A] duty under the same contract [is not] affected if it was not one to render a performance to be exchanged under an exchange of promises.... Furthermore, only duties to render performance are affected. A claim for damages that has already arisen as a result of a claim for partial breach is not

In addition, the following circumstances are significant in determining when a party's duties are discharged under a contract due to the other party's material breach:
(1) the extent to which it reasonably appears to the injured party that delay may prevent or hinder him in making reasonable substitute arrangements.
(2) the extent to which the agreement provides for performance without delay, but a material failure to perform or to offer to perform on a stated day does not of itself discharge the other party's remaining duties unless the circumstances, including the language of the agreement, indicate that performance or an offer to perform by that day is important.
RESTATEMENT (SECOND) OF CONTRACTS § 242.

3. Similarly, a duty of the injured party that is not part of the agreed exchange of performances is not discharged. "And a duty of the injured party to give a performance that is the agreed equivalent of performance that has

discharged under the rule stated in this Section." RESTATEMENT (SECOND) OF CONTRACTS § 237 cmt. e.[3]

Thus, the general rule is that an uncured material breach before the injured party has fully performed his duties with respect to the expected exchange, will discharge that party's remaining duties of performance and give rise to a claim for damages for total breach. RESTATEMENT (SECOND) OF CONTRACTS §§ 237, 243. But, "[t]here is, of course, an exception where the injured party has already, at the time of the breach, come under a duty to render performance of an agreed equivalent under the rule stated in § 240. Such a duty is not discharged, even if there is a material breach, and its survival does not prevent the injured party from claiming damages for total breach under Subsection (1)." RESTATEMENT (SECOND) OF CONTRACTS § 243 cmt. a.

Here, the factoring agreement contemplates a series of offers by PTRI to sell invoices and acceptances by Allied, with

been given by the other party is not discharged (§ 240)." RESTATEMENT (SECOND) OF CONTRACTS § 236 cmt. b. Under section 240, if performances to be exchanged can be apportioned into corresponding pairs of part performances that can be regarded as agreed equivalents, a party's performance of his part of a pair has the same effect on the other party's duty to perform its corresponding part of the pair. RESTATEMENT (SECOND) OF CONTRACTS § 240. The purpose of this rule is to reduce "the risk of forfeiture in that important class of cases in which it is proper to regard corresponding parts of the performances of each party as agreed equivalents. Its effect is to give a party who has performed one of these parts the right to its agreed equivalent just as if the parties had made a separate contract with regard to that pair of corresponding parts. A failure as to some other part does not affect this right." RESTATEMENT (SECOND) OF CONTRACTS § 240 cmt. a.

neither party under an obligation to offer or accept. Allied could accept the offer by paying the purchase price less the reserve under the terms of the factoring agreement. It is undisputed that PTRI submitted schedules of invoices to Allied for factoring in November and Allied accepted by paying the purchase price less the fees and reserves specified in the factoring agreement. According to Garcia, the overall debt with Allied was about $850,000 and PTRI paid it down to about $520,000. Although a substantial portion of this amount was part of the buyout of American Receivable, there is no dispute that Allied performed as to the November invoices.

PTRI does not contend, and there is no evidence, that Allied committed a material breach with respect to the factoring of the November schedule of invoices. In exchange for Allied's performance as to the November invoices, PTRI promised to repurchase any unpaid invoices and gave a security interest in all of its accounts to secure that promise. These duties and obligations of PTRI were not conditioned on Allied's subsequent purchase of additional accounts, or other performance under the factoring agreement. Thus, regardless of whether Allied failed to either purchase or decline the offered December invoices and whether any such action constituted a material breach, Allied's alleged actions would not discharge PTRI's duties with regard to the November invoices. *See* RESTATEMENT (SECOND) OF CONTRACTS §§ 236 cmt. b, 237 cmt. e, 240 (1981).

■ Regarding the other alleged breaches, the record is unclear when the $14,000 non-factored invoices were collected by Allied, but Garcia agreed that Allied factored about $270,000 for the November invoices. Garcia also admitted he had computer access to the reserve account at least until December 2008 or early January 2009. Under this record and the circumstances mentioned in restatement sections 240 and 241, it is not probable that either of these alleged breaches (the $14,000 in non-factored receivables and the failure to provide monthly statements) would rise to the level of a material breach that would cause Allied to forfeit its security interest, at least to the extent of the November invoices.

■ A temporary injunction should be extraordinary, not routine.

An applicant for a temporary injunction seeks extraordinary equitable relief. He seeks to immobilize the defendant from a course of conduct which it may well be his legal right to pursue. Crowded dockets, infrequent jury trial weeks, or trial tactics can often delay a trial of a case on its merits for many months. The applicant has, and in equity and good conscience ought to have, the burden of offering some evidence which, under applicable rules of law, establishes a probable right of recovery.... If he cannot or does not discharge his burden he is not entitled to extraordinary relief. Writs of injunction should not issue on mere surmise.

*Camp v. Shannon,* 162 Tex. 515, 519, 348 S.W.2d 517, 519 (1961). We conclude the trial court abused its discretion by enjoining the enforcement of the security interest at least to the extent of the November invoices.

We sustain Allied's first issue. We need not address the remaining issues. TEX. R.APP. P. 47.1. We reverse the trial court's orders granting and modifying the temporary injunction, vacate the temporary injunction, and remand for further proceedings.