**Reverse and Remand and Opinion Filed August 26, 2013**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-01024-CV**

**CARLOS RAMIREZ, MIXSY RAMIREZ, THE RAMIREZ ENERGY
GROUP, INC., DESIREE MCKELLAR, MILES MCKELLAR,
AND HISENERGY, LLC, Appellants**
**V.**
**IGNITE HOLDINGS, LTD. AND STREAM SPE, LTD, Appellees**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 12-06049**

## MEMORANDUM OPINION

Before Justices O'Neill, FitzGerald, and Lang-Miers
Opinion by Justice FitzGerald

This is an interlocutory appeal from a temporary injunction. Appellants complain that the injunction is not detailed enough, is not supported by sufficient pleadings or evidence, and is self-contradictory. We reverse the injunction in part.

### I. BACKGROUND

**A.     Facts**

Except as otherwise noted, we take these facts from the trial judge's findings in support of the temporary injunction. Stream Gas & Electric, Ltd. is a retail provider of electricity and natural gas to consumers in several states including Texas. Appellees Ignite Holdings, Ltd. (Ignite) and Stream SPE, Ltd. (Stream) are both wholly owned subsidiaries of Stream Gas &

Electric. Ignite is a marketing subsidiary, and Stream is the entity to which Stream Gas & Electric's Texas electricity customers pay their bills.

Ignite uses a sales force of independent associates to sell Stream Gas & Electric's electricity and natural gas products. Independent associates can recruit other people to become Ignite independent associates. These recruits are known as the "downline" of the independent associate who recruited them. An independent associate earns commissions based on his or her own sales and on the sales of his or her downline. Every independent associate enters into a written agreement with Ignite that defines the associate's compensation and entitles the associate to support from Ignite in the form of training materials, seminars, and access to other confidential information. In return, each independent associate agrees not to participate in other business opportunities involving products or services that are related to the sale of natural gas or electricity in any geographic area where Ignite or its parent offers such products or services. Each independent associate also agrees not to be involved in soliciting products or services for any other energy company, in cross-recruiting other Ignite independent associates, or in attempting to buy or sell any customers of Stream Gas & Electric. These clauses apply during the independent-associate relationship and for one year thereafter.

Appellants were Ignite independent associates and agreed to the foregoing terms. Nevertheless, no later than early 2012, appellants began competing with Ignite and Stream. Appellants violated their non-competition clauses by working for one of appellees' competitors and violated their non-solicitation clauses by soliciting independent associates in their downlines to do the same.

Evidence showed that Ignite terminated Miles and Desiree McKellar's status as independent associates on May 3, 2012. Other evidence indicated that Ignite terminated Carlos and Mixsy Ramirez's status as independent associates on May 22, 2012.

**B.    Procedural history**

On June 1, 2012, appellees Ignite and Stream sued appellants on several theories of liability, including breach of contract and misappropriation of trade secrets. Appellees sought not only damages but also a temporary restraining order, a temporary injunction, and a permanent injunction. The trial judge granted appellees a temporary restraining order. On June 4, the trial judge heard a motion to dissolve the TRO by appellants, and he denied that motion.

The trial judge later conducted a hearing on appellees' request for a temporary injunction. The hearing extended over two days, and several witnesses testified. The trial judge then granted appellees' application for a temporary injunction. He signed the temporary injunction on July 3, 2012, and appellants timely filed a notice of interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West Supp. 2012) (authorizing interlocutory appeal from order granting temporary injunction).

**C.    The provisions of the temporary injunction**

As discussed above, the trial judge made findings of fact that appellants had engaged in conduct that violated their non-competition and non-solicitation agreements with Ignite, such as working for a competitor of Ignite and Stream and encouraging independent associates in their downlines to do the same. After making these findings, the judge ordered in paragraph 7 of the injunction that appellants and any persons "in active concert with any of them" in connection with the conduct previously found by the judge were restrained and enjoined from the following acts:

a)    participating in any business opportunity (other than operating an Ignite IA position) involving products or services that are related to the sale of natural gas or electricity in any geographic area in which Ignite or Stream Energy offers such products or services;

b)    soliciting other IAs who are currently sponsored by another individual under the Ignite program to participate in any other network marketing program;

–3–

c)  sponsoring, or directly or indirectly helping others to sponsor, into any other competing or non-competing sales organization or program any IA not personally sponsored by such defendant (regardless of whether such network marketing company offers energy services);

d)  being involved directly or indirectly in the solicitation of products or services for any other energy company;

e)  marketing the services of, or operating or contributing to a website regarding, North American Power or any of its related entities;

f)  possessing, disclosing to any third party, or using for their own benefit or to the detriment of Ignite and Stream Energy any of Ignite's or Stream Energy's Proprietary Information/Trade Secrets (including but not limited to proprietary information, confidential information, training materials, templates, or sales or customer lists);

g)  destroying, discarding, altering, or deleting any documents, emails, or text messages relating in any way to this lawsuit or the subject matter of this Order.

As to the McKellars and HisEnergy, LLC, paragraphs "a" through "e" of the injunction expired on May 3, 2013, or upon the entry of final judgment, whichever came first. As to the Ramirezes and The Ramirez Energy Group, Inc., paragraphs 7(a) through 7(e) expired on May 22, 2013, or upon the entry of final judgment, whichever came first. Paragraphs 7(f) and 7(g) remain in effect as to all appellants until the entry of final judgment.

## II.  ANALYSIS

### A.  Standard of review

We review a temporary injunction for abuse of discretion. *Allied Capital Partners, LP v. Proceed Technical Res., Inc.*, 313 S.W.3d 460, 464 (Tex. App.—Dallas 2010, no pet.). The applicant must show a cause of action against the other party, a probable right to the relief sought, and a probable, imminent, and irreparable injury if the injunction does not issue. *Id*. We do not reach the merits of the dispute in an interlocutory appeal, and we will not assume that the evidence at the temporary-injunction hearing will be the same as the evidence developed at the trial on the merits. *Id*.

–4–

**B.      Moot issues**

Appellants raise six issues on appeal, the first four of which concern only paragraphs 7(a) through 7(e) of the temporary injunction. Each of those paragraphs has expired by its own terms. When a temporary injunction becomes inoperative due to the passage of time, the issue of its validity becomes moot, and we cannot address it. *Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999). Accordingly, appellants' first four issues on appeal are moot, and we do not address them.

**C.      Paragraph 7(f) of the injunction**

In their fifth issue, appellants complain that paragraphs 7(a), 7(b), 7(c), and 7(f) of the temporary injunction are improper because they are not specific and detailed enough to satisfy Texas Rule of Civil Procedure 683. The issue is moot except as to paragraph 7(f), so we limit our discussion to paragraph 7(f) of the injunction.

Rule 683 provides that an injunction shall "describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained." TEX. R. CIV. P. 683. The rule's purpose is to ensure the enjoined parties are given adequate notice of the acts they are enjoined from doing. *Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 552 (Tex. App.—Dallas 1993, no writ). "An injunction must be as definite, clear, and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ . . . ." *Computek Computer & Office Supplies, Inc. v. Walton*, 156 S.W.3d 217, 220–21 (Tex. App.—Dallas 2005, no pet.). Paragraph 7(f) of the temporary injunction restrains appellants from "possessing, disclosing to any third party, or using for their own benefit or to the detriment of Ignite and Stream Energy any of Ignite's or Stream Energy's Proprietary Information/Trade Secrets (including but not limited to proprietary information, confidential

information, training materials, templates, or sales or customer lists)." Appellants argue that the phrase "Ignite's or Stream Energy's Proprietary Information/Trade Secrets" is so vague as to violate Rule 683. Appellees respond that this phrase is defined in the injunction in reasonably specific detail.

We review the injunction as a whole to ascertain how it defines the phrase "Ignite's or Stream Energy's Proprietary Information/Trade Secrets." In paragraph 7(f) itself, the phrase is said to include without limitation "confidential information" and "proprietary information," which are broad, general terms. Earlier, in paragraph 5 of the injunction, the trial judge defines the phrase "Proprietary Information/Trade Secrets" as "valuable business, training, and sales techniques, methods, forms, materials, guides, lists, downline associate and customer lists, including personal identifying information, and other confidential and proprietary information as discussed above." Again, the phrase is defined with broad, general words such as "techniques," "materials," and "other confidential and proprietary information as discussed above." This definition does not effectively narrow or limit the meaning of "Proprietary Information/Trade Secrets." The phrase "other confidential and proprietary information as discussed above" in paragraph 5 seems to refer to paragraph 2, in which the judge found that Ignite gave appellants access to "proprietary marketing materials, training materials, the right to attend innumerable live training seminars, [and] organizational reports (which are considered proprietary and confidential)." Thus, reading the injunction as a whole, we conclude that paragraph 7(f)'s phrase "Ignite's and Stream Energy's Proprietary Information/Trade Secrets" encompasses many categories of materials. Some categories are fairly specific, such as "downline associate and customer lists" and "organizational reports," but others are broad and general, such as "techniques," "materials," "proprietary information," and "confidential information."

We have not found any precedent cases precisely on point. In one case, the Fort Worth Court of Appeals upheld a temporary injunction that forbade the appellants from using "Bell trade secrets and confidential information" because the injunction as a whole made it clear that this phrase meant "information pertaining to Bell's 206B and OH–58 helicopter blades." *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 201–02 (Tex. App.—Fort Worth 2005, no pet.). Thus, that injunction was considerably more specific and detailed than the injunction in the instant case, which encompasses without limitation all of appellees' "proprietary information" and "confidential information." We have considered a couple of cases involving secret customer lists. An injunction that prohibits a party from soliciting customers on lists that are exhibits to the injunction is sufficiently detailed and specific. *Rugen*, 864 S.W.2d at 553. But an injunction that prohibits a defendant from contacting any of the plaintiff's clients that do not appear on a particular list is not specific enough because it does not specifically identify "the off-limits clients, without inferences or conclusions." *Computek*, 156 S.W.3d at 222–23.

We conclude that paragraph 7(f) is not specific and detailed enough to pass muster under Rule 683 and must therefore be reversed. That provision of the injunction does not define "Proprietary Information/Trade Secrets" with enough specificity to give appellants adequate notice of the acts they are restrained from doing. Instead, they must infer whether any particular information or item in their possession constitutes "proprietary information" or "confidential information" subject to the injunction. This is impermissible. *See id.*

The last question is what relief we should grant in light of our holding. In *Computek*, we reversed part of a permanent injunction because it was not specific enough, and we reversed a different part because it was too broad and forbade some lawful conduct. *Id.* at 222–23, 224. We reformed the part of the injunction that was overly broad by modifying and narrowing it, but we reversed the insufficiently specific part of the injunction outright and remanded the case for

further proceedings on that issue. *Id*. at 224. Following that approach, we will reverse paragraph 7(f) of the temporary injunction and remand for further proceedings.

**D.      Paragraph 7(g) of the injunction**

In their sixth and last issue, appellants complain that paragraph 7(g) of the temporary injunction is improper because it is not supported by pleadings or evidence, because it is not sufficiently specific and detailed to satisfy Rule 683, and because it conflicts with paragraph 7(f). Paragraph 7(g) forbids appellants from "destroying, discarding, altering, or deleting any documents, emails, or text messages relating in any way to this lawsuit or the subject matter of this Order." Appellees argue that paragraph 7(g) was sufficiently specific and was not an abuse of discretion in light of the trial judge's determination that appellants' testimony was not credible.

We agree with appellants. We have already concluded that paragraph 7(f) was too vague to satisfy Rule 683. Paragraph 7(g) incorporates similarly nonspecific terms. In paragraph 7(g), the trial judge forbids appellants from destroying materials relating in any way to "the subject matter of this Order," which would include the nonspecific terms "confidential information" and "proprietary information." Thus, in order to determine whether a particular document relates "confidential information" or "proprietary information," and thus may not be destroyed, appellants would have to infer what those terms encompass. Because paragraph 7(g) forces appellants to infer what conduct is forbidden, that paragraph violates Rule 683 and must be reversed.

As appellees themselves note, litigants owe a duty to preserve evidence once they know or reasonably should know that a claim will be filed and that the evidence in their possession or control is potentially relevant to that claim. *See Wal–Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 722 (Tex. 2003); *Adobe Land Corp. v. Griffin, L.L.C.*, 236 S.W.3d 351, 357–58 (Tex.

–8–

App.—Fort Worth 2007, pet. denied). Thus, by the time of the temporary-injunction hearing, appellants already owed appellees a legal duty not to destroy any potentially relevant evidence.

### III. CONCLUSION

For the foregoing reasons, we reverse paragraph 7(f) and paragraph 7(g) of the temporary injunction, and we remand the case for further proceedings consistent with this opinion.

121024F.P05

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CARLOS RAMIREZ, MIXSY RAMIREZ, THE RAMIREZ ENERGY GROUP, INC., DESIREE MCKELLAR, MILES MCKELLAR, AND HISENERGY, LLC, Appellants

No. 05-12-01024-CV  V.

IGNITE HOLDINGS, LTD. AND STREAM SPE, LTD, Appellees

On Appeal from the 14th Judicial District Court, Dallas County, Texas
Trial Court Cause No. 12-06049.
Opinion delivered by Justice FitzGerald.
Justices O'Neill and Lang-Miers participating.

        In accordance with this Court's opinion of this date, we **REVERSE** paragraph 7(f) and paragraph 7(g) of the Temporary Injunction signed on July 3, 2012, and we **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

        It is **ORDERED** that appellants CARLOS RAMIREZ, MIXSY RAMIREZ, THE RAMIREZ ENERGY GROUP, INC., DESIREE MCKELLAR, MILES MCKELLAR, and HISENERGY, LLC, recover their costs of this appeal from appellees IGNITE HOLDINGS, LTD. and STREAM SPE, LTD.

Judgment entered August 26, 2013

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE