**AFFIRM; and Opinion Filed November 2, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00455-CV

### JOHN LEONARD MARKL AND DEBRA KAY MARKL, Appellants
### V.
### ETHEL MAUDETTE LEAKE, Appellee

**On Appeal from the 397th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. CV-15-0126**

## MEMORANDUM OPINION
Before Justices Fillmore, Stoddart, and O'Neill[1]
Opinion by Justice Fillmore

In a single issue in this interlocutory appeal, husband and wife John Leonard Markl (John) and Debra Kay Markl (Debra)[2] contend the trial court erred by denying their request for a temporary injunction.[3] We affirm the trial court's order denying a temporary injunction.

## Background

John and Debra brought suit against Ethel Maudette Leake, alleging causes of action for breach of fiduciary duty, fraud, constructive trust, conversion, and promissory estoppel.[4] John

---

[1] The Honorable Michael J. O'Neill, Justice, Assigned.

[2] Since the Markls share the same surname, we refer to them individually in this opinion as John and Debra.

[3] Section 51.014(a)(4) of the civil practice and remedies code allows an appeal from an interlocutory order that "grants or refuses a temporary injunction or grants or overrules a motion to dissolve a temporary injunction as provided by Chapter 65" of the civil practices and remedies code. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (West 2015); *Leighton v. Rebeles*, 343 S.W.3d 270, 272 (Tex. App.—Dallas 2011, no pet.).

[4] Leake filed counterclaims of assault, negligence, and intentional infliction of emotional distress against John.

and Debra allege that in "approximately" 2004, John began an extramarital relationship with Leake. Over the next decade, John "supported" Leake by giving her money, placing her on the payroll of his business, providing her a gasoline credit card, and maintaining her vehicle and real property. John provided Leake approximately $25,000 to $30,000 per year in financial support. According to their pleading, Leake owns two parcels of real property in Denison, Texas, her primary residence and a rental property. Based on their "committed relationship," John invested approximately $25,000 in Leake's primary residence and $10,000 in her rental property. In late 2014, Leake accused John of assault, resulting in his indictment on felony charges. Leake obtained a protective order against John prohibiting his entry upon her real property. John and Debra believe Leake intends to sell one or both of her parcels of real property "without compensating [them] for their investment." As a result, John and Debra also seek a temporary restraining order, temporary injunction, and permanent injunction to prevent Leake from disposing of the two parcels of real property in which they purportedly invested money. The trial court signed a temporary restraining order, and that order was extended by agreement of the parties.

By affidavit attached to John and Debra's pleading, John attested he began an extramarital relationship with his "girlfriend" Leake which lasted ten years. John had been hired by Leake to do work on her primary residence, and six weeks into that project, they became romantically involved. John attested he renovated Leake's home, but was not compensated for his work. During the duration of their relationship, John supported Leake by placing her on the payroll of his heating and air conditioning business and providing her a company credit card for gasoline purchases. He also repaired her vehicle as necessary and maintained both her primary residence and rental property. John attested he invested approximately $25,000 in Leake's primary residence and $10,000 in her rental property. According to John, it was always Leake's

–2–

intent that he would receive "the benefit of [his] investment." In his affidavit, John indicated he and Leake had an argument regarding their relationship on October 23, 2014. Following the "altercation," Leake caused John to be indicted for four felony charges and obtained a protective order prohibiting his entry upon her real property.

At the hearing of John and Debra's application for a temporary injunction, John testified he had a financial and sexual relationship with Leake for a period of approximately ten years beginning in December 2004. John testified that, based on their relationship, he and Leake had a heightened level of trust in, and dependency on, one another. John testified further that the early part of their relationship centered around their work on Leake's residence. John expended approximately $25,000 on Leake's residence and, after the renovation was complete, he continued to maintain the house. John also paid Leake a rental fee for storing his vehicles on her property. John indicated that he expended approximately $10,000 on upgrades and maintenance of Leake's rental property. According to John, during the last several years of their relationship, he was the source of half of Leake's monthly income.

John testified there was a plan for John to live with Leake in her residence, or receive the house upon her death. In 2007 and 2008, Leake mortgaged her primary residence, and she acknowledged to John that she had encumbered his interest in the property. John admitted there was no written agreement or instrument relating to his purported interest in Leake's real property. Leake executed a will granting John her assets upon death. In order to protect the financial interest of each of them in the event of death of the other, John and Leake each owned a life insurance policy and had designated the other as a beneficiary of the policy. John acknowledged that a beneficiary designation under a will can be changed, as can a beneficiary designation under a life insurance policy.

–3–

During the summer of 2014, Leake became "involved" with John's nephew; the relationship between Leake and John thereafter deteriorated and their physical relationship ended in July 2014. However, John testified he supported Leake financially until all aspects of their relationship ended in October 2014. John's indictments for burglary of Leake's habitation and causing, or threatening Leake with, physical assault, for which John was arrested in October 2014, were admitted in evidence. John testified he is out of jail pending trial on felony charges, and that, under the conditions of his bond, he is precluded from being near Leake.

Leake also testified at the temporary injunction hearing. She acknowledged she had been in a serious relationship with John based on faith and trust, and had told him frequently that she loved him. However, Leake testified her relationship with John was simply a dating relationship, and she did not believe she owed John a heightened duty of trust beyond that inherent in a boyfriend/girlfriend relationship. John told Leake on multiple occasions during their relationship that he was going to divorce his wife and marry her. During their relationship, John placed Leake on the payroll of his business. Leake acknowledged John had invested significant sums of money in her real property. When John began work on her property, Leake tried to pay him, but John refused compensation. John never stated during their relationship that he expected to be repaid the money he gave to her or the funds he expended on repairs and maintenance of her real property. Leake did not record sums expended by John on her real property or for her benefit as gifts on her federal income tax returns. Based upon their relationship of faith and trust, Leake executed a will providing that John would inherit her real property upon her death. However, Leake no longer has a will designating John as her beneficiary. At one time, she and John had mutual life insurance policies benefitting one another. Leake's real property in Denison currently consists only of rental properties, and Leake no longer resides in Denison.

The trial court denied the request for a temporary injunction. John and Debra filed this interlocutory appeal of the order denying their request for a temporary injunction.

## Fiduciary Relationship

John and Debra contend the trial court erred by denying their request for a temporary injunction, because they "clearly established" the existence of fiduciary relationships between John and Leake and between Debra and Leake. On appeal, they state the only issue before this Court is whether they produced sufficient evidence to show a probable right to the relief sought.

### Standard of Review

We apply well-established standards of review to the granting or denial of a temporary injunction. *See Allied Capital Partners, LP v. Proceed Tech. Res., Inc.*, 313 S.W.3d 460, 463–64 (Tex. App.—Dallas 2010, no pet.). The decision to grant or deny a temporary injunction lies within the sound discretion of the trial court. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993)); *Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472, 477 (Tex. App.—Dallas 2010, no pet.). When a trial court denies an application for a temporary injunction, it abuses its discretion if its decision is so arbitrary as to exceed the bounds of reasonable discretion. *Wilson N. Jones Mem'l Hosp. v. Huff*, 188 S.W.3d 215, 218 (Tex. App.—Dallas 2003, pet. denied).

A trial court abuses its discretion when it misapplies the law to established facts or when the evidence does not reasonably support its determination regarding the existence of probable right of recovery or a probable injury. *Dallas Anesthesiology Assocs., P.A. v. Tex. Anesthesia Grp., P.A.*, 190 S.W.3d 891, 896 (Tex. App.—Dallas 2006, no pet.). However, a trial court does not abuse its discretion in denying an application for a temporary injunction based on its holding that the applicant failed to prove one of the requirements for a temporary injunction. *See Wilson N. Jones Mem'l Hosp.*, 188 S.W.3d at 218. Also, there is no abuse of discretion when a trial

court bases its decision on conflicting evidence because there is some evidence of record that reasonably supports its decision. *Graham Mortg Corp.*, 307 S.W.3d at 478; *Dallas Anesthesiology Assocs.*, 190 S.W.3d at 896. An appellate court will not substitute its judgment for that of the trial court. *Graham Mortg. Corp.*, 307 S.W.3d at 478. An appellate court draws all legitimate inferences from the evidence in the light most favorable to the trial court's order granting or denying the application for a temporary injunction. *Id.* We do not reach the merits of the dispute on interlocutory appeal and will not assume the evidence presented at the temporary injunction hearing will be the same as the evidence developed at a full trial on the merits. *Proceed Tech. Res., Inc.*, 313 S.W.3d at 464.

### Applicable Law

A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Butnaru*, 84 S.W.3d at 204. "The extraordinary equitable remedy of an injunction must be carefully regulated and confined to proper cases." *El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740, 743 (Tex. App.—Dallas 2011, no pet.). To be entitled to a temporary injunction, an applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204; *Jireh Star, Inc.*, 356 S.W.3d at 743. The party applying for a temporary injunction has the burden of production, which is the burden of offering some evidence that establishes a probable right to recover and a probable interim injury. *Dallas Anesthesiology Assocs.*, 190 S.W.3d at 897. If an applicant does not discharge his burden, he is not entitled to such extraordinary relief. *Id.*

### Analysis

"There are two types of fiduciary relationships: formal fiduciary relationships that arise as a matter of law, such as partnerships and principal-agent relationships, and informal fiduciary

relationships or 'confidential relationships' that may arise from moral, social, domestic, or personal relationships." *Smith v. Deneve*, 285 S.W.3d 904, 911 (Tex. App.—Dallas 2009, no pet.). But a fiduciary relationship is an extraordinary one and will not be created lightly. *Id.*; *see also Patrusky v. Bloomberg*, No. 05-14-00175-CV, 2015 WL 3896097, at *8 (Tex. App.—Dallas June 24, 2015, no pet.) (mem. op.) (fiduciary relationship is not created lightly).

Whether a confidential relationship exists is "determined from the actualities of the relationship between the persons involved." *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962). The mere fact that one party to a relationship subjectively trusts the other does not indicate the existence of an informal fiduciary relationship. *Deneve*, 285 S.W.3d at 911; *see also Crim Truck & Tractor Co.*, 823 S.W.2d 597, 595 (Tex. 1992), *superseded by statute on other grounds as recognized in Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212 (Tex. 2002) (mere subjective trust alone is not enough to transform arms-length dealing into fiduciary relationship); *Patrusky*, 2015 WL 3896097, at *8 (not every relationship involving a high degree of trust and confidence rises to stature of fiduciary relationship). A person is justified in placing confidence in the belief that another will act in his or her best interest "only where he or she is accustomed to being guided by the judgment or advice of the other party, and there exists a long association in a business relationship, as well as a personal friendship." *Pabich v. Kellar*, 71 S.W.3d 500, 505 (Tex. App.—Fort Worth 2002, pet. denied).

With regard to Debra's assertion of a fiduciary relationship with Leake establishing a probable right to relief that would justify a temporary injunction, John and Debra have cited to no authority, and we have located no authority, recognizing a fiduciary relationship between the wife of a husband involved in an extramarital affair and the woman with whom the husband is carrying on that affair. Further, there is no evidence in this record that Debra was aware of Leake's extramarital affair when it was ongoing such that there could be any relationship

between Debra and Leake, much less a fiduciary relationship. We conclude the trial court did not abuse its discretion in denying Debra's request for temporary injunction because there is no evidence of her probable right to relief based on an asserted fiduciary relationship with Leake.

We next turn to John's assertion of a fiduciary relationship with Leake establishing a probable right to relief that would justify a temporary injunction. While a marital relationship is a fiduciary one, *Solares v. Solares*, 232 S.W.3d 873, 881 (Tex. App.—Dallas 2007, no pet.), John and Leake were never spouses. John and Leake's relationship was that of a legally married man and his mistress, albeit a long term one. John does not cite any case, and we have found none, declaring the existence of a fiduciary relationship based on an extramarital affair. John contends his longstanding romantic and sexual relationship with Leake and the sums he expended on behalf of Leake, coupled with Leake executing a will declaring John as the beneficiary and John and Leake's mutual life insurance policies naming the other as beneficiary, evidence a fiduciary relationship between them. Viewing the evidence in the light most favorable to the trial court's order denying the temporary injunction, Leake testified she and John were simply girlfriend and boyfriend, a dating relationship substantively different from a marital union. In his affidavit, John referred to Leake as his former "girlfriend." *See In re R.O.*, No. 03-04-00506-CV, 2005 WL 910231, at *8 (Tex. App.—Austin Apr. 21, 2005, no pet.) (mem. op.) ("Even if [appellant] believed that her illicit relationship with [married man with whom she had extramarital affair] was one of mutual trust and confidence, her subjective trust is insufficient to transform their dealing—which involved each acting in his or her respective best interest—into a fiduciary or confidential relationship entitled to legal protection."). Leake testified she did not believe she owed John a heightened duty of trust beyond that inherent in a boyfriend/girlfriend relationship. While the life insurance policies that Leake and John once maintained naming the other as beneficiary, and Leake's prior will naming John as a beneficiary, may evidence some

subjective trust between the two of them, the documents do not establish the existence of a fiduciary relationship. *See Hubbard v. Shankle*, 138 S.W.3d 474, 483 (Tex. App.—Fort Worth 2004, pet. denied) (romantic relationship between insured and named beneficiary of life insurance policy did not establish fiduciary relationship). The evidence that John maintained Leake's vehicle and her real properties, or that he placed her on the payroll of his business, does not show he placed any hightened degree of trust in Leake. Rather, they demonstrate donative gifting of labor and sums of money to a girlfriend. Leake testified she tried to compensate John for his labor on her residence, but he would not accept payment. John acknowledged there was no written agreement or instrument entitling him to a security interest in Leake's real property. *See In re R.O.*, 2005 WL 910231, at *8 (failure to exercise reasonable diligence to protect one's interest is not excused by mere confidence in honesty and integrity of other party). We conclude the trial court did not abuse its discretion in denying John's request for temporary injunction because there is no evidence of his probable right to relief based on an asserted fiduciary relationship with Leake.

### Conclusion

We conclude the trial court did not abuse its discretion by denying John and Debra's request for a temporary injunction based on a determination that they had not established a probable right to relief because of a purported fiduciary relationship between John and Leake or between Debra and Leake. *See Dallas Anesthesiology Assocs.*, 190 S.W.3d at 896 (no abuse of discretion when trial court bases its decision on conflicting evidence because there is some evidence of record that reasonably supports its decision; trial court does not abuse its discretion in denying application for temporary injunction based on applicant failing to prove one of the requirements for temporary injunction). We resolve John and Debra's sole issue against them.

We affirm the trial court's order denying John and Debra's request for a temporary injunction.

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE

150455F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

JOHN LEONARD MARKL AND DEBRA KAY MARKL, Appellants

No. 05-15-00455-CV            V.

ETHEL MAUDETTE LEAKE, Appellee

On Appeal from the 397th Judicial District Court, Grayson County, Texas,
Trial Court Cause No. CV-15-0126.
Opinion delivered by Justice Fillmore, Justices Stoddart and O'Neill participating.

 

In accordance with this Court's opinion of this date, the order of the trial court denying appellants' request for temporary injunction is **AFFIRMED**.

It is **ORDERED** that appellee Ethel Maudette Leake recover her costs of this appeal from appellants John Leonard Mark and Debra Kay Markl.

Judgment entered this 2nd day of November, 2015.