

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00091-CV

_____

ROBERT P. BERG, Appellant

V.

KRISTI WILSON, Appellee

On Appeal from the 62nd Judicial District Court
Hopkins County, Texas
Trial Court No. CV38399

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

OPINION

On May 19, 2008, by entering into a Rule 11[1] settlement agreement, Robert P. Berg and Kristi Wilson "buried the hatchet" of a pending business-separation lawsuit. A central question for this appeal is whether the handle was left sticking out, in other words, whether Berg's underlying claims, predating the settlement, should have been part of the subsequent jury trial between Berg and Wilson.

Berg, a prominent designer of western jewelry, had met Wilson at the National Rodeo Finals in Las Vegas in 2005. Wilson, a mortician, desired a change of career—she intended to pursue her interest in all things western, having grown up raising horses and being involved in the rodeo business. Berg and Wilson began a relationship and also began working together in Berg's jewelry business, which was in somewhat of a financial strait. Wilson used her contacts in the industry to help rebuild the business, located in Yukon, Oklahoma. The business began to gain ground; in 2007, Wilson and Berg moved to Hopkins County and into a newly purchased house on eighty-seven acres.[2] Wilson and Berg lived together and successfully operated the business of Bob Berg Designs, Inc., from that house.

---

[1]Tex. R. Civ. P. 11.

[2]The land is variously referred to as eighty-seven acres and eighty-nine acres; only one tract seems intended. Due to Berg's poor credit history, he was unable to obtain a loan to buy the property. Consequently, Wilson obtained the loan in her name and purchased the property for $389,000.00. A down payment of $100,000.00 was made on the property from proceeds of the jewelry business. The deed to the property is in Wilson's name only.

Then, in March 2008, Berg and Wilson had a heated personal confrontation, which resulted in Wilson leaving the house. When Wilson returned a few days later, she discovered that Berg had moved the business inventory and financial records to the home of Martha Hayward, their only employee. As a result, the business was left in disarray. The following month, Wilson sued Berg for breach of fiduciary duty, seeking an accounting of partnership property and requesting a temporary restraining order to enjoin Berg from removing, encumbering, or transferring inventory of Bob Berg Designs, among other things. The trial court issued a temporary restraining order in April 2008. The following month, Wilson and Berg entered into the Rule 11 agreement, ostensibly resolving all disputes between them.[3] The agreement provided a number of

---

[3]The settlement agreement, as dictated into the record, provides:

1. On or before 30 days after today or as soon thereafter as the bank has made the loan that's contemplated in paragraph three below, Kristi Wilson will surrender the following items of personalty to Bob Berg by placing them in an open area protected from weather and other hazards at 3872 County Road 3504, and those items are as follows:

- all personal items belonging to Bob Berg as of January, 2006;
- all business inventory of the business Bob Berg Designs;
- the copier;
- a horse called Doc;
- the white cargo trailer and its contents, which shall include everything that was in the trailer at the last time Bob Berg was there, for example, booths, belts, inventory, clothes, et cetera;
- the aluminum horse trailer;
- mirror in the house;
- an orange tractor believed to be a Kabota [sic];
- a Bombay desk;
- an old laptop computer if it can be found;
- a plasma television, 52 inches wide or approximately that wide;
- all booths for showing merchandise, except the screw together booths which Kristi Wilson will keep;

2. Bob Berg will pick all of those items up by noon that day, weather permitting. After that hour, Kristi shall have no responsibility for any of it. When he picks the personal property up, Wilson will leave the white 1999 Ford F-350 pickup at the same place, at the same time, and in substantially the same condition it was when he got it a month or six weeks ago.

3. No later than 30 days from today, Kevin Buchanan (attorney for Berg) will notify me (Bruce Monning, attorney for Wilson) of the date and time and give me at least between five and ten days in which to do it, that he would like for the longhorn cattle that are in my possession and owned by the parties or subject to this controversy to be delivered at a place of Mr. Buchanan's selection.

4. No later than 30 days after today or at the same time if a real estate closing is required in order for Ms. Wilson to raise the money, Ms. Wilson will pay $25,000 cash to or for – to Bob Berg or for his account. If it is necessary to use a bank loan to raise that money, that money will be paid by the title company to Mr. Berg or at his direction.

5. At the same time as the closing, or if it is not necessary for Wilson to get a loan, Berg will execute a Special Warranty Deed to waive any and all interest he has in the 89 acres that was described on Plaintiff's Exhibit 6 earlier today to Ms. Wilson, and he will cause the lis pendens notice that's been issued in this case to be removed.

  At this point in the proceeding, Buchanan pointed out that "the loan that may be necessary that is contemplated by the Rule 11 Agreement will be no more than $25,000." Monning responded simply with a "yes."

6. Bob Berg, Martha Hayward, and Kristi Wilson agree to fully, completely, mutually releasing [sic] all claims that any of them has or may have against any other.

7. Kristi Wilson and Bob Berg will not have any direct communications between them by telephone, fax, email, or in person or otherwise. This does not mean that the parties can have no communication with Martha Haywood.

8. Bob Berg shall own the business Bob Berg Designs under any by that name [sic] including all cash, merchandise, inventory, work in progress, accounts receivable, copy rights [sic], and any deviation [sic] of the name of Bob Berg. Kristi Wilson relinquishes all claims she has to any of the Bob Berg designs or Bob Berg associated business.

9. Kristi Wilson shall own the property described in Plaintiff's Exhibit 6, which is also 3872 County Road 3504, and everything in it or on it except the items of personal property listed in paragraph one above.

10. All claims asserted by all parties will be dismissed with prejudice to refiling by any party. Each party denies any and all liability for any of the claims but agrees to this settlement only by peace and to avoid the cost of further litigation.

11. Kristi Wilson represents that she has turned over or will turn over all business inventory where they're in her possession, custody or control.

4

obligations, including one for Wilson to pay Berg the sum of $25,000.00, either within thirty days of the agreement, or as soon as a contemplated real estate loan was closed with a bank. The real estate loan was finalized August 20, 2008. Wilson, through counsel, tendered the $25,000.00 to Berg September 10, 2008. Berg refused to accept the tender of funds, claiming Wilson was in breach of the agreement. He filed an amended answer and counterclaim in the underlying lawsuit, alleging Wilson breached the Rule 11 agreement in failing to pay the $25,000.00 in a timely fashion, in failing to return business inventory, and in using copyrighted material in violation of the agreement.[4]

Wilson filed a motion to strike Berg's amended pleadings, a motion to enforce the Rule 11 agreement, and a second amended original petition alleging Berg's breach of the Rule 11 agreement.[5] Next, Wilson filed a motion for summary judgment, alleging that the causes of action set forth in Berg's amended answer and counterclaim were released by the Rule 11 agreement and moving for judgment on the affirmative defenses of accord and satisfaction and estoppel. Berg responded, alleging that there were genuine issues of material fact regarding Wilson's alleged breach of the agreement, thereby excusing Berg's performance.

---

[4]Berg's counterclaim also alleged fraud, breach of contract, breach of fiduciary duty, conversion, theft (Texas Theft Liability Act), and sought a constructive trust on certain real property.

[5]Allegations of breach were based on Berg's refusal to accept the $25,000.00 payment tendered by Wilson and further based on his refusal to execute a special warranty deed to the certain real property, as contemplated by the agreement.

The trial court granted partial summary judgment, finding the Rule 11 agreement was "valid, legal and binding," but reserving for trial the issues involving the parties' compliance or failure to comply with the Rule 11 agreement.

After a four-day trial on the issue of whether either or both parties breached the Rule 11 agreement, the jury determined that Berg breached the agreement and Wilson did not. The jury assessed attorneys' fees to Wilson.[6] The final judgment ordered that Berg take nothing on his counterclaim and awarded attorneys' fees to Wilson in accordance with the jury verdict.[7]

We affirm the judgment of the trial court because (1) addressing the breach-of-settlement-agreement claims separately from the underlying claims was within the trial court's discretion, (2) Berg's affirmative defenses were fairly covered by the jury issues submitted, (3) declaring the lis pendens void was not error, and (4) awarding Wilson attorneys' fees was not error.

*(1)    Addressing the Breach-of-Settlement-Agreement Claims Separately from the Underlying Claims Was Within the Trial Court's Discretion*

In multifarious sub-points all basically complaining of the perceived loss of his counterclaim, Berg alleges trial court error. At its core, Berg's complaint is that, because Berg claimed that Wilson repudiated or breached the settlement agreement, Berg was entitled to elect

---

[6]Wilson did not request damages, other than her attorneys' fees.

[7]In addition, the judgment declared void the notice of lis pendens filed by Berg on or about June 27, 2008, in Hopkins County (eighty-seven-acre property titled in Wilson's name).

his remedy—to either proceed on the underlying cause of action or claim damages for breach of the settlement agreement. Berg contends the partial summary judgment prevented him from presenting his counterclaims—those matters purportedly resolved by the settlement agreement—to the jury.[8]

Initially, Berg phrases the issue as an election of remedies, relying on well established Texas law that, when a claim is released for a promised consideration that is not given, the claimant may either pursue rights under the release, or treat the release as rescinded and recover on the underlying claim.[9] *Murray v. Crest Constr.*, 900 S.W.2d 342, 344 (Tex. 1995); *see also*

---

[8]Wilson's traditional motion for summary judgment alleges the existence of the Rule 11 agreement and recites that, subsequent to the execution of that agreement, Berg filed an amended counterclaim urging new causes of action against her and further asserting a breach of the agreement. Wilson claims the causes of action alleged by Berg (fraud, constructive trust, conversion, civil claim of theft) were released pursuant to the Rule 11 agreement. Wilson's motion interprets Berg's amended counterclaim as a withdrawal of consent to the Rule 11 agreement. Wilson moved the court to enforce the settlement agreement, because she alleged it met the requirements of Rule 11. *See W. Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 255 (Tex. App.—Austin 2002, no pet.). Wilson further moved the court to bar Berg's counterclaims based on her affirmative defenses of accord, satisfaction, release, and estoppel, and submitted affidavits to show her alleged compliance with the terms of the agreement. Wilson prayed that Berg take nothing on his counterclaims because her summary judgment evidence established accord, satisfaction, and release. In his response, Berg defensively asserted the existence of fact issues regarding Wilson's alleged repudiation of the agreement, and submitted affidavits in support of this allegation. The partial summary judgment entered by the trial court found the existence of fact issues with respect to breach of the Rule 11 agreement by "the parties."

[9]Berg further complains that the trial court erred in granting the partial summary judgment, because that judgment foreclosed his counterclaims. The court granted a partial summary judgment finding only that the parties had entered into a valid, legal, and binding agreement. The agreement was reduced to writing and was dictated into the court's record by the respective attorneys for each party. Both parties approved the settlement agreement as dictated into the record. An agreement to settle a case is enforceable by the trial court if it complies with Rule 11 of the Texas Rules of Civil Procedure. *See Padilla v. La France*, 907 S.W.2d 454, 460 (Tex. 1995). To comply with Rule 11, the agreement must be either (1) in writing, signed, and filed with the papers as part of the record, or (2) made in open court and entered of record. TEX. R. CIV. P. 11; *Padilla*, 907 S.W.2d at 459. Thus, a settlement agreement between the parties is a valid and enforceable agreement, even though it is not in writing, where the agreement is made in open court and agreed to by the parties. *E. Tex. Salt Water Disposal Co. v. Hughes*, No. 12-04-00333-CV, 2006 WL 300410 (Tex. App.—Tyler Feb. 8, 2006, pet. denied) (mem. op.). Moreover, settlement agreements are governed by contract law. *Alcantar v. Okla. Nat'l Bank*, 47 S.W.3d 815, 819 (Tex. App.—Fort Worth 2001, no pet.). As such, a

*Hernandez v. LaBella*, No. 14-08-00327-CV, 2010 WL 431253 (Tex. App.—Houston [14th Dist.] Feb. 9, 2010, no pet.) (mem. op.) (repudiation or anticipatory breach of settlement agreement permits nonbreaching party to elect not to proceed with settlement agreement); *BACM 2001-1 San Felipe Rd. Ltd. P'ship v. Traflagar Holdings I*, *Ltd*., 218 S.W.3d 137, 146 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (on failure of debtor to perform under executory accord, creditor may treat accord as repudiated and may choose to claim rights under the original cause of action or the accord); *Shaw v. Kennedy*, *Ltd*., 879 S.W.2d 240, 247 (Tex. App.—Amarillo 1994, no pet.) (if settlement agreement breached, nonbreaching party may treat agreement as repudiated and claim rights either under the agreement or the underlying cause of action).

The hurdle Berg attempts to bypass is an actual finding of breach by Wilson. Here, both Berg and Wilson alleged the other breached the settlement agreement. Berg contends he should nevertheless have been permitted, on the mere *allegation* of breach, to try to the jury the underlying claims ostensibly resolved by the settlement agreement. Berg relies on the aforementioned cases in support of his contention that he was entitled to proceed to trial on the

settlement agreement must define its essential terms with sufficient detail to allow a court to determine the obligations of the parties. *Sadeghi v. Gang*, 270 S.W.3d 773, 776 (Tex. App.—Dallas 2008, no pet.).

Here, the parties' actions of dictating their agreement into the record in open court complied with the procedural format of Rule 11 of the Texas Rules of Civil Procedure. Neither party contends the essential terms of the Rule 11 agreement are not sufficiently definite. Thus, the trial court's finding that the Rule 11 agreement was valid (as preceded by its findings that the parties entered into the agreement, which disposed of all claims and disputes between them, that the agreement was dictated into the record, and that the agreement was approved by the court) appears only to mean that the agreement indeed complied with Rule 11. The agreement was binding because its terms were sufficiently definite to permit enforcement. Wilson, therefore, contends that the trial court's finding that the agreement was "valid, legal and binding" means nothing more than it complied with the terms of Rule 11 and was sufficiently definite to enforce. We agree. The partial summary judgment did not resolve or attempt to "rule" on Berg's counterclaims.

8

underlying claims, without a judicial determination of whether Wilson breached the settlement agreement.[10]

In *Murray*, the primary case on which Berg relies, Murray and Crest settled a job dispute by Murray executing a waiver of lien in exchange for a promissory note from Crest. *Murray*, 900 S.W.2d at 344. Subsequently, Crest informed Murray that it would not pay the full amount of the promissory note when it came due, claiming it was entitled to offset certain completion costs against the note. After receiving the claim for offset, Murray filed a lien against property in which Crest had an interest. Crest sued Murray, alleging tortious interference with Crest's contract with its general contractor. Murray counterclaimed for breach of contract. In affirming the trial court's judgment in Murray's favor, the high court determined that, once Crest repudiated the settlement agreement, Murray was under no obligation to honor the waiver of lien. *Id.* Crest's breach gave Murray an election to pursue a claim on the promissory note or to reassert its original claim on the construction job. *Id*.

While *Murray* is instructive on the issue of repudiation, it does not prescribe a procedure to determine the issue of breach in a circumstance where, as here, repudiation is not the issue.[11]

---

[10]None of these cases adopt a procedure which would omit a judicial determination of a contested claim of material breach of a settlement agreement in favor of proceeding directly to trial on the settled claim(s).

[11]To constitute repudiation, a party to a contract must absolutely and unconditionally refuse to perform the contract without just excuse. *Bans Props., L.L.C. v. Housing Auth. of Odessa*, 327 S.W.3d 310, 315 (Tex. App.—Eastland 2010, no pet.). A party claiming anticipatory breach of a contract must establish the following three elements: (1) a party to a contract has absolutely repudiated the obligation; (2) without just excuse; and (3) the other party is damaged as a result. *Pollack v. Pollack*, 39 S.W.2d 853, 855 (Tex. Comm'n App. 1931, holding approved); *Hauglum v. Durst*,

9

Here, the primary issue was whether one or both parties breached the Rule 11 settlement agreement. The decision on whether Berg would be entitled to try his counterclaims could not be made until such time as the issue of breach of the settlement agreement was resolved. This was acknowledged in the trial court.[12]

Whether a party has breached a contract is a question of fact to be determined by the trier of fact. *Allied Capital Partners*, *L.P. v. PTRI*, 313 S.W.3d 460 (Tex. App.—Dallas 2010, no pet.). Here, the jury determined that Berg, not Wilson, breached the agreement. This determination foreclosed Berg's option to try his counterclaims. Berg maintains, however, that, even if it was

---

769 S.W.2d 646, 651 (Tex. App.—Corpus Christi 1989, no writ). The record here does not indicate repudiation of the settlement agreement by either party.

[12]In context, this is the acknowledgment:

> Mr. Buchanan [attorney for Berg]: We did not comply with the Rule 11 Agreement in a sense that once she tendered the money to us, then we didn't accept it, and we didn't tender ours. So, what - - I have an affirmative defense plead which is offset in rescission - - essentially rescission.
>
> THE COURT: Let's say you get that issue, let's say it's found to be true, where does that leave you?
>
> Mr. Buchanan: Election of remedies. I think the way the charge gets set up, it's an election of remedies. I get to ask the jury a question as to was there a material breach. Both parties ask that question. I get to ask the question as to whether or not I am excused . . . from performance. Then we're both going to ask questions about what our damages are.
>
> Mr. Rogers: There it is.
>
> Mr. Buchanan: We're both - - the reason why we're asking those is because if I win the rescission issue then I get - - I'm the winner. I get to elect which way we're going. Either I can collect my money damages with the offset from them for whatever money damages they have, or I can elect rescission, and we go back to square one.

appropriate to try the settlement agreement issues, his counterclaims should have been tried in the same trial.

Wilson contends the trial court was within its discretion to initially try the contract claims, in reliance on the reasoning employed in *Zars v. Esquivel*, No. 04-04-00892-CV, 2005 WL 3115763 (Tex. App.—San Antonio Nov. 23, 2005, no pet.) (mem. op.). In that case, the parties entered into a settlement agreement, which was allegedly breached. The trial court granted summary judgment on the breach of contract claim and thereafter severed the original, underlying action. On appeal, Zars claimed the trial court erred in severing the underlying claims. In finding no error, the court recognized that the claimed breach of contract was a separate cause of action from the underlying claims intended to be resolved by the settlement agreement. The contract action involved different issues and facts than the underlying claims. Because the breach-of-contract claim was one that would be the proper subject of a lawsuit if independently asserted, the trial court did not abuse its discretion in granting the severance. *Id.* at *2.

Here, even though the contract claims were not formally severed, those claims—which involved different issues and were based on different facts than the underlying claims—were tried separately. [13] This was effectively a separate trial on the breach-of-settlement-agreement

---

[13]The underlying claims asserted by Berg as counterclaims included fraud, breach of fiduciary duty, conversion, civil theft, and constructive trust.

11

claims,[14] which eliminated the need to introduce evidence on the underlying claims that would have been very time consuming and may have been prejudicial to one or both parties. This reasoning is likened to that employed in insurance matters where bad faith claims are typically severed from contract claims. *See U.S. Fire Ins. Co. v. Millard*, 847 S.W.2d 668, 673 (Tex. App.—Houston [1st Dist.] 1993, writ denied). In that case, the court explained that bad faith, Insurance Code, and Deceptive Trade Practices Act (DTPA) claims are dependent on the outcome of the contractual cause of action:

> This result obtains because the extra-contractual claims are based on allegations of bad faith on the part of defendant in its investigation of the plaintiffs' claims and inadequacy of its settlement offers. If, in the underlying case, the defendant prevails on liability, or if the finder of fact concludes that the plaintiffs' damages do not exceed the defendant's settlement offer, then defendant's conduct necessarily cannot have been in bad faith. It would be a waste of the court's, the jury's, the parties', and the attorneys' time to hear evidence on the bad faith claims when a finding in the contract lawsuit could be peremptorily dispositive.

This reasoning applies here as well. While a balance must be struck between the ability to shorten the process and the need to avoid piecemeal trials, the trial court's action in first trying the contract claims was reasonable and fit well with the logical structure of this case. The resolution of whether one or both parties breached the agreement would determine whether Berg was entitled to try his underlying counterclaims. Proceeding in this fashion allowed the trial court to

---

[14]Rule 174(b) of the Texas Rules of Civil Procedure authorizes bifurcated trials. "The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, or of any number of claims, counterclaims, third-party claims, or issues." TEX. R. CIV. P. 174(b). We do not know, from this record, what the trial court would have done if the jury had come back with a verdict favoring Berg, for example, whether it might have continued into a second part of trial on the underlying issues. *See Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 30 (Tex. 1994).

12

defer—and thus avoid—a full-blown trial on the issues of fraud, breach of fiduciary duty, conversion, civil theft, and constructive trust. Had the jury returned the opposite verdict, Berg would have then been permitted to try his counterclaims, if he elected to do so. The trial court did not abuse its discretion in choosing to initially try the claims that the settlement agreement had been breached.[15]

*(2)     Berg's Affirmative Defenses Were Fairly Covered by the Jury Issues Submitted*

Berg submitted the following proposed jury question, which the trial court refused:

Was Bob Berg's failure to comply excused?

1.  Failure to comply by Bob Berg is excused by Kristi Wilson's previous failure to comply with a material obligation of the same agreement.

2.  Failure to comply by Bob Berg is excused by Kristi Wilson's prior repudiation of the same agreement.

---

[15]Berg also claims the trial court erred in summarily finding the Rule 11 agreement was "valid, legal and binding" because such relief was neither prayed for nor sought in Wilson's motion for summary judgment. Wilson's summary judgment motion asked the court to bar Berg's counterclaims based on her affirmative defenses of accord and satisfaction, release, and estoppel. The prayer asks that the court render judgment (1) that defendants take nothing on the claims asserted on defendant's first amended counterclaim and (2) that Wilson recover costs from defendants, attorneys' fees, together with such other and further relief to which defendants may be entitled. Wilson did not specifically ask the trial court to find the agreement to be "valid, legal and binding." Under Rule 166a(c), Texas Rules of Civil Procedure, a motion for summary judgment must "state the specific grounds therefor," and the trial court is to render judgment if "the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response." TEX. R. CIV. P. 166a(c). Here, Wilson's summary judgment asserted that a Rule 11 agreement existed between the parties settling all matters. In addition, Wilson alleged, in great detail, her compliance with that agreement. Wilson's request that the trial court determine the affirmative defenses of accord and satisfaction, release, and estoppel were *predicated* on her compliance with the Rule 11 agreement. The finding of a valid Rule 11 agreement is implicit in Wilson's request that the trial court bar Berg's counterclaims based on her compliance with the terms of that agreement. The issue of the validity of the Rule 11 agreement was the predicate on which the requested relief was based. By definition, the motion included a request for such relief. This appears to be a case where the trial court did not grant more relief than requested. Rather, in only finding the Rule 11 agreement valid, legal, and binding, the trial court granted less relief than requested.

13

3. A party repudiates an agreement when she indicates by her words or actions that she is not going to perform her obligations under the agreement in the future, showing a fixed intention to abandon, renounce, and refuse to perform the agreement.

Berg claims this refusal constituted reversible error. We disagree.

The standard of review for alleged error in the jury charge is abuse of discretion. *Lake Conroe Med. Ctr., Ltd. v. KMT Bldg. Co.*, 290 S.W.3d 541 (Tex. App.—Beaumont 2009, no pet.). A trial court's refusal to submit a properly requested question or instruction constitutes an abuse of discretion only if it acts without guiding rules or principles. *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647 (Tex. 1990). "The goal of the charge is to submit to the jury the issues for decision logically, simply, clearly, fairly, correctly and completely." *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999). Accordingly, the trial court is accorded broad discretion so long as the jury charge is legally correct. *Id.*

Berg claims that, because there was more than a scintilla of evidence in the record of excuse and anticipatory repudiation, the trial court was required to submit the foregoing question and instructions. *See id.* (trial court must submit all questions, instructions, and definitions raised by evidence); *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992) (same); *see also* TEX. R. CIV. P. 278 (trial court shall submit questions, instructions, and definitions in form provided by Rule 277 which are raised by pleadings and evidence). Berg outlines in his brief the evidence at trial he claims supported a submission of a jury question and instruction on these affirmative issues.

Wilson does not contend the evidence was insufficient to submit a question on excuse

14

based on repudiation or failure to comply with a material obligation of the agreement. Rather, Wilson contends the issue of excuse (based on repudiation and/or failure to comply) was subsumed under the issues submitted. As previously discussed, the court submitted breach of contract questions disjunctively, together with an instruction directing the jury to decide who committed the first material breach. The commentary to PJC 101.2 (basic question on compliance) recognizes this method of submission.

> **Disjunctive question for competing claims of material breach.** If both parties allege a breach of contract against one another, the court can ask the breach-of-contract question disjunctively, together with appropriate instruction directing the jury to decide who committed the first material breach. *Mustang Pipeline Co. v. Driver Pipeline Co*., 134 S.W.3d 195, 200 (Tex. 2004). An alternative way to submit competing claims of breach of an agreement is set forth below.[16]

---

[16]The questions submitted here were submitted in the precise manner competing claims for breach are to be submitted under the PJC. Questions 1 and 2 read as follows:

Did Bob Berg fail to comply with the Rule 11 Settlement Agreement? (Question number 2 is the same, but asks if Kristi Wilson failed to comply with the Rule 11 Settlement Agreement). Both questions were accompanied by the following instructions:

1. A failure to comply with an agreement must be material. The circumstances to consider in determining whether a failure to comply is material include:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking into account the circumstances including any reasonable assurances;

The trial court then submitted a conditional instruction to determine who breached first (assuming both breached). The PJC commentary states:

> The Committee believes that this conditional submission satisfies the supreme court's instruction in *Mustang Pipeline Co.*, 134 S.W.3d at 200, to have the jury determine which party breached first and thereby excused performance by the other party. *See Mustang Pipeline Co.*, 134 S.W.3d at 200.

Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Business, Consumer, Insurance & Employment* PJC 101.2 (2010). The jury found that Berg breached the agreement and that Wilson did not.

In *Mustang*, both parties raised the other's material breach as an affirmative defense. Here, Wilson alleged Berg's breach and Berg asserted the affirmative defense of excuse based on Wilson's material breach:[17] "Defendants also pled, as an affirmative defense to any claims brought by Plaintiff under any purported Rule 11 Settlement Agreement, that they are excused

---

> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing;
>
> (f) the extent to which it reasonably appears to the injured party that the delay may prevent or hinder the injured party in making reasonable substitute arrangements;
>
> 2. Compliance with an agreement must occur within a reasonable time under the circumstances, unless the parties agreed that the compliance must occur within a specified time and the parties intended compliance within such time to be an essential part of the agreement.
>
> 3. In determining whether the parties intended time of compliance to be an essential part of the agreement, you may consider the nature and purpose of the agreement and the facts and circumstances surrounding its making.

[17]Berg further alleged Wilson's claim was barred by the affirmative defenses of waiver, justification, modification, offset, ratification, estoppel, fraud, and unclean hands.

16

from performing under any such Rule 11 Settlement Agreement because Plaintiff materially breached any such Rule 11 Settlement Agreement."[18]

After discussing the issue of whether a material breach ensued, the high court noted that "these problems could have been avoided had the trial court submitted the breach of contract question disjunctively." *Mustang Pipeline Co.*, 134 S.W.3d at 200. In the standard contract dispute, one party refuses to perform due to the alleged breaches by the other—just as in this case. When that happens, "jurors will often find both parties failed to comply with the contract (as they did here) unless instructed that they must decide who committed the first material breach." *Id.* (citing *Mead v. Johnson Group*, *Inc.*, 615 S.W.2d 685, 689 (Tex. 1981)) (default by one contracting party excuses performance by the other).

Because both parties claimed breach—Wilson in her case-in-chief and Berg as an affirmative defense—the trial court followed the directive of the Texas Supreme Court in submitting the breach of contract question disjunctively, accompanied by an appropriate instruction directing the jury to decide who committed the first material breach. As the matter was submitted, Berg would have been excused from performance under the settlement agreement if the jury would have found Wilson committed the first material breach of that agreement.

*VingCard A.S. v. Merrimac Hospitality Systems*, *Inc.*, 59 S.W.3d 847 (Tex. App.—Fort Worth 2001, pet. denied), presents a similar situation. In that case, Merrimac sued VingCard for

---

[18]Berg's third amended answer does not separately assert the affirmative defense of excuse based on repudiation. Berg's counterclaim alleges a separate breach of contract claim, together with an alternative claim of repudiation.

breach of contract. VingCard asserted Merrimac's "prior material breach" as both an affirmative defense and a counterclaim. VingCard requested the following question and instruction on its excuse defense:

> Was VingCard A.S.'s violation excused?
>
> A party's violation of a contract is excused by the other party's prior unexcused violation of a material obligation of the contract.

*Id.* at 865. The Fort Worth court found the trial court submitted VingCard's counterclaim issue by asking whether Merrimac "fail[ed] to fulfill" the agreement and "fail[ed] to cure the non-fulfilling element(s), if any, within a reasonable time." *Id.* Citing *Hyundai Motor Co.*, 995 S.W.2d at 664, the court recognized that "a single, broad form question may relate to multiple legal theories to avoid the risk that the jury will become confused and answer questions incorrectly." *VingCard*, 59 S.W.3d at 865. Moreover,

> While the trial court's questions should obtain fact-findings on all theories pleaded and supported by evidence, a trial court is not required to, and should not, confuse the jury by submitting differently worded questions that call for the same factual finding.

*Id.* at 865–66 (citing *Hyundai Motor Co.*, 995 S.W.2d at 665–66). The court concluded:

> Here, the trial court's decision to submit a broad form issue regarding Merrimac's breach of the agreement subsumed both VingCard's affirmative defense of excuse and its counterclaim for breach of contract. By finding Merrimac had not violated any material obligation of the VingCard contract, the jury necessarily found that VingCard's termination of the agreement was not excused. Because the submitted charge allowed consideration of VingCard's affirmative defense of excuse, we conclude the trial court did not abuse its discretion in refusing VingCard's requested issue on excuse.

18

*Id.* at 866.

Berg attempts to distinguish *VingCard* on the basis that here, the separate claims of material breach and repudiation each have distinct elements. This is an accurate statement—Berg's defense of excuse was based on either material breach or repudiation. Material breach is defined as the "previous failure to comply with a material obligation of the same agreement." *Texas Pattern Jury Charges: Business*, *Consumer*, *Insurance & Employment* PJC 101.2. The Pattern Jury Charges set out a separate instruction on anticipatory repudiation:

> A party repudiates an agreement when he indicates, by his words or actions, that he is not going to perform his obligations under the agreement in the future, showing a fixed intention to abandon, renounce, and refuse to perform the agreement.

*Texas Pattern Jury Charges: Business*, *Consumer*, *Insurance & Employment* PJC 101.2.

Because the jury found that Wilson was not in material breach of the agreement, it could not have logically found repudiation. This is especially true in light of the fact that the alleged repudiation (asserted only in Berg's counterclaim for breach of contract) was supported by the *same facts* alleged to have caused the breach.[19]

---

[19]Berg's counterclaim for breach of contract states that Wilson materially breached the settlement agreement by:

> (1) failing to timely tender the $25,000.00 payment required by the Settlement Agreement, (2) failing to turn over all inventory to BOB BERG, (3) failing to deliver inventory conveyed to BOB BERG under the terms of the Settlement Agreement, (4) failing to deliver personal items conveyed to BOB BERG under the terms of the Settlement Agreement, (5) converting to her own use inventory conveyed to BOB BERG under the terms of the Settlement Agreement and/or (6) using copyrights and intellectual property belonging to Bob Berg Designs conveyed to BOB BERG under the terms of the Settlement Agreement.

19

The issues of excuse and/or repudiation were subsumed by the trial court's submission of disjunctive questions for competing claims of material breach, together with an instruction directing the jury to determine who committed the first material breach. The trial court therefore did not abuse its discretion in failing to submit separate issues on these affirmative defenses.

*(3)     Declaring the Lis Pendens Void Was Not Error*

Before the settlement agreement was made, Berg asserted an ownership interest in the real property (eighty-seven acres and house) titled in Wilson's name. This alleged ownership interest stems from a $100,000.00 cash down payment on the property made from the proceeds of Berg's business. With respect to the real property, the settlement agreement provided:

> At the same time as the closing, [of the loan to obtain funds to pay Berg under the agreement] or if it is not necessary for Wilson to get a loan, Berg will execute a special warranty deed to waive any and all interest he has in the 89 acres that was described on Plaintiff's Exhibit 6 earlier today to Ms. Wilson, and he will cause the lis pendens notice that's been issued in this case to be removed.

The final judgment stated that "IT IS FURTHER ORDERED that the Notice of Lis Pendens filed by Defendant, Robert P. Berg on or about June 27, 2008 in Hopkins County is void."

---

Berg's claim of anticipatory repudiation indicates:

> In addition and/or in the alternative, WILSON'S actions, as described above, [actions purporting to show a breach of contract] including, but not limited to, her failure to tender payment of the $25,000.00 in a timely manner despite repeated requests, her refusal to deliver inventory of Bob Berg Designs, and her use of copyrighted intellectual property belonging to BOB BERG and Bob Berg Designs, constituted a refusal or inability to comply with the Rule 11 Settlement Agreement. The acts or omissions of WILSON constituted an unequivocal expression of her inability or refusal to comply with the Rule 11 Settlement Agreement such that BOB BERG is justified in accepting this expression as a final anticipatory breach or repudiation of the Rule 11 Settlement Agreement and he is relieved of any further obligations under the Rule 11 Settlement Agreement. BOB BERG seeks rescission of the Rule 11 Settlement Agreement.

20

Berg claims the trial court erred in voiding the lis pendens, "because there were genuine issues of material fact as to whether Wilson substantially complied and Berg had the right to elect to pursue his underlying claims to the real property."

The purpose of filing a lis pendens is twofold—to protect the rights the filing party claims in the property disputed in the lawsuit and to put those interested in the property on notice of the lawsuit. *Collins v. Tex Mall*, *L.P*., 297 S.W.3d 409, 418 (Tex. App.—Fort Worth 2009, no pet.). A lis pendens notice, however, operates only during the pendency of the lawsuit and terminates with the judgment, in the absence of appeal. *Hartel v. Dishman*, 145 S.W.2d 865, 869 (Tex. 1940); *Collins*, 297 S.W.2d at 418. Because the lis pendens terminates with the judgment, it was not necessary for the trial court to declare the lis pendens void. It was not, however, error to do that which was unnecessary, but was the result of the judgment. Berg fails to explain why the normal rules of lis pendens application should not apply here. We overrule this point of error.[20]

*(4)    Awarding Wilson Attorneys' Fees Was Not Error*

Berg also contends the trial court erred in awarding Wilson attorneys' fees under the Uniform Declaratory Judgments Act (UDJA) because hers was a suit to try title. Berg bases this contention on language in Wilson's second amended original petition alleging that, as part of her breach of contract claim, Berg "released, transferred, and/or conveyed any interest which he had in

---

[20]The lis pendens at issue was filed in the district clerk's office of Hopkins County, Texas. Section 12.007 of the Texas Property Code provides that a notice of lis pendens is to be filed with the county clerk of each county where a part of the property is located. TEX. PROP. CODE ANN. § 12.007(a) (West Supp. 2010). Wilson thus contends the lis pendens is void in any event. *See Khraish v. Hamel*, 762 S.W.2d 906 (Tex. App.—Dallas 1988, writ denied) (lis pendens filed in wrong county was void for failure to comply with statute).

21

the tract of land" in accordance with the terms of the agreement. Berg contends that because Wilson's claim for declaratory relief was merely incidental to title issues, the UDJA does not authorize an award of attorneys' fees. *See Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 289 (Tex. 2002). Section 22.001 of the Texas Property Code provides that a "trespass to try title action is the method of determining title to lands, tenements, or other real property." TEX. PROP. CODE ANN. § 22.001 (West 2000). It is the exclusive remedy by which to resolve competing claims to property. *Ely v. Briley*, 959 S.W.2d 723, 727 (Tex. App.—Austin 1988, no pet.).

In her second amended original petition, Wilson asked the trial court to declare that the real property is her sole and separate property, pursuant to the UDJA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.002 (West 2008). Additionally, Wilson specifically requested attorneys' fees pursuant to Chapter 37.009 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008) ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorneys' fees as are equitable and just.").

A declaration under the UDJA is appropriate "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations."[21] TEX. CIV. PRAC. & REM.

---

[21]The scope of the UDJA includes,

> A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (West 2008).

22

CODE ANN. § 37.002(b). Under the UDJA, the court "may award . . . reasonable and necessary attorneys' fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009.

Berg does not question the amount of the fees, but rather challenges Wilson's right to recover under the statute. The availability of attorneys' fees under a particular statute is a question of law for the court. *Holland v. Wal-Mart Stores*, *Inc*., 1 S.W.3d 91, 94 (Tex. 1999); *Bollner v. Plastics Solutions of Tex.*, *Inc*. 270 S.W.3d 157, 171 (Tex. App.—El Paso 2008, no pet.). To preserve an issue of law, the appellant must raise the issue through one of the following: (1) a motion for directed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the submission of the question to the jury, (4) a motion to disregard the jury's answer to a vital fact question, or (5) a motion for new trial. *See Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex. 1991); *Martin v. Martin*, 326 S.W.3d 741, 746–47 (Tex. App.—Texarkana 2010, pet. denied).

The issue of whether attorneys' fees are recoverable under the UDJA in this instance was not preserved by any of the foregoing methods. Although Berg filed a motion for new trial, the motion did not address the issue of whether attorneys' fees are recoverable under the UDJA in this case.[22] Berg also filed objections to the plaintiff's proposed judgment, in which he complained of the award of attorneys' fees based on the breach of contract claim. No objection or complaint was made in the trial court regarding the propriety of the award of attorneys' fees under the UDJA.

---

[22]The motion for new trial claimed a lack of evidence to support the jury's answers to the breach of contract issues and further complained of the trial court's refusal to submit defendant's requested jury question on excuse based on breach and/or repudiation.

Because Berg did not preserve error to appeal the issue of whether attorneys' fees were recoverable under the UDJA, this point of appeal is overruled.[23]

We agree with Berg's contention that, to the extent attorneys' fees were awarded on Wilson's breach of contract claim, such award was improper. We review the trial court's decision to award attorneys' fees de novo. *G.R.A.V.I.T.Y. Enters.*, *Inc. v. Reece Supply Co.*, 177 S.W.3d 537 (Tex. App.—Dallas 2005, no pet.).

In her second amended original petition, Wilson prayed for the recovery of attorneys' fees "because this is a claim on an oral or written contract within the meaning of the Texas Civil Practices [sic] and Remedies Code. As a result of Berg's breach, Wilson has been required to retain the services of counsel to prosecute this action as well as for any appeal therefrom." Wilson did not seek damages independent of attorneys' fees, and the jury assessed only attorneys' fees.

Chapter 38 of the Texas Civil Practice and Remedies Code allows recovery of attorneys' fees in breach of contract cases in addition to the amount of a valid claim. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2008). In order to recover fees, a party must (1) prevail on the breach of contract claim, and (2) recover damages. *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 666 (Tex. 2009); *Mustang Pipeline Co.*, 134 S.W.3d at 201; *Green Int'l*, *Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). The requirement of damages is implied from the statute's language, "in addition to the amount of a valid claim," the claimant must recover some

---

[23]At oral argument, counsel for Berg conceded that this is not a trespass to try title action.

24

amount on that claim. *MBM Fin. Corp.*, 292 S.W.3d at 666.

Wilson acknowledges the common theme of this line of cases—a breach without harm or damage will not support attorneys' fees under Section 38.001, but claims this case can be distinguished because the actual damage was her attorneys' fees. In support of this proposition, Wilson argues that the damage resulting from the breach of contract is the continuation of the litigation and the resulting attorneys' fees she incurred. She claims that the loss resulting here mirrors the damage elements in contract settings. Here, Wilson claims that, because she was forced to continue the litigation with resulting, necessary expenses, those fees are an element of contractual damages, and are thus recoverable under Section 38.001. While this argument is creative and highly logical, it is not supported by Texas statutory or caselaw. Because Wilson did not recover actual damages, she was not entitled to recover attorneys' fees on her breach of contract claim.

Wilson's second amended original petition alleges entitlement to attorneys' fees under both the UDJA and Chapter 38 of the Texas Civil Practice and Remedies Code. Neither the jury verdict, nor the final judgment awarding attorneys' fees, segregates the fees to the various causes of action. Generally, a party seeking attorneys' fees must show that the fees were incurred on a claim that allows recovery of such fees and must segregate fees incurred among different claims or separate parties. *See Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 73 (Tex. 1997); *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991), *modified on other grounds by Tony*

*Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006). When, however, the claims are "dependent upon the same set of facts or circumstances and thus are 'intertwined to the point of being inseparable,' the party suing for attorneys' fees may recover the entire amount covering all claims." *Sterling*, 822 S.W.2d at 11 (citing *Gill Sav. Ass'n v. Chair King*, *Inc.*, 783 S.W.2d 674, 680 (Tex. App.—Houston [14th Dist.] 1989), *aff'd in part & modified in part on other grounds*, 797 S.W.2d 31 (Tex. 1990)).

In this case, the fees were undoubtedly based on the same set of facts and are thus "intertwined to the point of being inseparable." Plus, there was no effort to separate them.

We affirm the judgment of the trial court.

Josh R. Morriss, III
Chief Justice

Date Submitted:      September 28, 2011
Date Decided:       November 2, 2011