**Affirm and Opinion Filed September 19, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00296-CV**

**UNIVERSAL REHEARSAL PARTNERS, LTD., Appellant**
**V.**
**VINCE BARNHILL, Appellee**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-22-00172**

## MEMORANDUM OPINION

Before Justices Myers, Pedersen, III, and Garcia
Opinion by Justice Myers

Universal Rehearsal Partners, Ltd. brings an interlocutory appeal of the trial court's denial of a temporary injunction against Vince Barnhill. Universal brings four issues on appeal contending (1) the trial court erred by denying a temporary injunction because it presented sufficient evidence to obtain a temporary injunction; (2) Barnhill's illegal conduct cannot constitute the status quo; (3) Barnhill should not be allowed to continue drawing a salary; and (4) Barnhill should not be permitted to deny the partnership and other partners access to partnership records. We affirm the trial court's order denying the temporary injunction.

# BACKGROUND

Prior to September 2000, Barnhill operated a business providing rehearsal space rented to musicians and bands. Barnhill and John Kirtland knew one another because Kirtland had a band that rehearsed there. In September 2000, Kirtland and Barnhill agreed to operate the rehearsal-space business as a limited partnership.

The partnership agreement provided that Barnhill was the general partner and Kirtland was the limited partner. They each had a fifty-percent interest in the partnership. All "Major Decisions" would have to be approved by both partners. "Major Decisions" included the approval of the partnership budget, employee and partner compensation and duties, the hiring and firing of partnership employees and agents, and the terms on which they were hired. The general partner and the general partner's affiliates were not entitled to compensation from the partnership; however, if the partners decided to compensate themselves, they were each to receive equal compensation. The limited partner had the power to remove the general partner upon giving the general partner written notice of removal due to the occurrence of certain events, including the general partner's acting in contravention of the terms or intent of any provision in the partnership agreement or the application or appropriation of partnership funds in an unauthorized manner. After the general partner is removed, he becomes a limited partner with all the rights and duties of a limited partner. The newly appointed general partner would then receive a one-percent interest in the partnership taken from the previous general partner's interest.

On November 12, 2021, Kirtland gave Barnhill written notice that Barnhill was removed from the position of general partner. The notice listed eleven areas where Barnhill had failed in his duties as general partner, including making major decisions without Kirtland's consent by causing the partnership to pay Barnhill or his affiliates compensation for Barnhill's work managing the partnership, Barnhill's not paying property and income taxes timely, Barnhill's using some of the rehearsal space as his personal living space without compensating the partnership when the space could have been rented out as rehearsal space, and Barnhill's failing to keep full and accurate books and records of all transactions of the partnership. The notice stated that Q PM, LLC was now the general partner.

Universal filed suit against Barnhill on January 11, 2022, alleging causes of action including breach of contract, breach of fiduciary duty, requests for declaratory judgment, an action for accounting, and a request for injunctive relief. The trial court entered a temporary restraining order against Barnhill. The court then held a hearing on Universal's application for a temporary injunction. Kirtland and Barnhill testified at the hearing about their relationship and the partnership. After the hearing, the trial court signed a written order denying the application for a temporary injunction and dissolving the temporary restraining order.

## TEMPORARY INJUNCTIONS

All of Universal's issues concern the trial court's order denying Universal's application for a temporary injunction.

Section 51.014(a)(4) of the Texas Civil Practice and Remedies Code permits an interlocutory appeal of a trial court's grant or denial of an application for a temporary injunction. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4). The decision to grant or deny an application for a temporary injunction is within the sound discretion of the trial court. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). An appellate court will not reverse a trial court's decision to deny an application for a temporary injunction absent an abuse of discretion. *See id.* An appellate court will not substitute its judgment for that of the trial court. *See id.* An appellate court draws all legitimate inferences from the evidence viewed in the light most favorable to the trial court's order granting or denying the application for a temporary injunction. *See Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 883 (Tex. App.—Dallas 2003, no pet.).

When a trial court denies an application for a temporary injunction, it abuses its discretion if its decision is so arbitrary as to exceed the bounds of reasonable discretion. *See Wilson N. Jones Mem'l Hosp. v. Huff*, 188 S.W.3d 215, 218 (Tex. App.—Dallas 2003, pet. denied). A trial court abuses its discretion when it misapplies the law to established facts or when the evidence does not reasonably support its determination regarding the existence of a probable right of recovery or a probable injury. *See Tom James of Dallas*, 109 S.W.3d at 883. However, a trial court does not abuse its discretion in denying an application for a temporary injunction based on its holding that the applicant failed to prove one of the

requirements for a temporary injunction. *See Wilson N. Jones Mem'l Hosp.*, 188 S.W.3d at 218. Also, there is no abuse of discretion when a trial court bases its decision on conflicting evidence when there is some evidence that reasonably supports its decision. *See Butnaru*, 84 S.W.3d at 211 (some evidence). As the factfinder, the trial court is the sole judge of the credibility of the witnesses and the weight to give their testimony; it may choose to believe one witness and disbelieve another. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005); *see Loye v. Travelhost, Inc.*, 156 S.W.3d 615, 620 (Tex. App.—Dallas 2004, no pet.).

A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Butnaru*, 84 S.W.3d at 204. For a temporary injunction to issue, the applicant must plead and prove: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.*; *see also* CIV. PRAC. § 65.011.

To establish a probable right to the relief sought, an applicant is required to allege a cause of action and offer evidence that tends to support the right to recover on the merits. *Dallas Anesthesiology Associates, P.A. v. Tex. Anesthesia Group, P.A.*, 190 S.W.3d 891, 896–97 (Tex. App.—Dallas 2006, no pet.). An applicant is not required to show he will prevail at the final trial because the ultimate merits of the case are not before the trial court. *Id.* at 897. A probable right to recovery may be proven by alleging the existence of a right and presenting evidence tending to show that right is being denied. *Id.*

For purposes of a temporary injunction, an injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204; *Wilson N. Jones Mem'l Hosp.*, 188 S.W.3d at 218. An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief. *El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740, 744 (Tex. App.—Dallas 2011, no pet.). The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru*, 84 S.W.3d at 204. The status quo is defined as, "the last, actual, peaceable, non-contested status which preceded the pending controversy." *Pierce v. State*, 184 S.W.3d 303, 308 (Tex. App.—Dallas 2005, no pet..) (quoting *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (orig.proceeding)).

The party applying for a temporary injunction has the burden of production, which is the burden of offering some evidence that establishes a probable right to recover and a probable interim injury. *See Dallas Anesthesiology*, 190 S.W.3d at 896; *Wyly v. Preservation Dallas*, 165 S.W.3d 460, 465 (Tex. App.—Dallas 2005, no pet.). If an applicant does not discharge his burden, he is not entitled to such extraordinary relief. *Wyly*, 165 S.W.3d at 465.

**ANALYSIS**

Universal states the temporary injunction it sought would have enjoined Barnhill from:

–6–

1. interfering with his removal as general partner;

2. acting as a signatory on the partnership's bank accounts;

3. collecting partnership income, including rents from the tenants;

4. residing at the property;

5. not making available the partnership books and records; and

6. interfering with QPM's ability to operate the business, including payment of the ordinary business expenses.

Universal concedes that the second requested form of injunctive relief, that Barnhill be enjoined from acting as a signatory on the partnership's bank accounts, is now "moot as the bank has removed Barnhill as a signatory and stated he will not ever be allowed back onto the accounts." Universal argues that for each of the other forms of requested injunctive relief, it "produced substantial (if not uncontroverted) evidence . . . meaning the trial court erred by denying the requested relief."

Universal pleaded causes of action that Barnhill breached the partnership agreement, breached his fiduciary duty to Universal, and an action for accounting. Generally, a court will not enforce contractual rights by injunction because a party can rarely establish an irreparable injury and an inadequate legal remedy when damages for breach of contract are available. *Butnaru*, 84 S.W.3d at 211.

The trial court granted a temporary restraining order on February 11, 2022. The restraining order provided:

1. Barnhill may not interfere with his removal as general partner and the installation of Q PM, LLC as general partner;

–7–

2. Barnhill may not be a signatory on the partnership's bank accounts;

3. Barnhill may not collect any rents due and must inform the tenants that cash rent will not be accepted by the partnership;

4. Barnhill shall not be permitted to sleep at the premises or maintain his personal effects there;

5. Barnhill shall make the books and accounts available to the partnership, Kirtland, and Q PM, LLC;

6. No party shall make a distribution to Barnhill or his entities without the written agreement of Barnhill and Kirtland;

7. Barnhill shall not interfere with Q PM, LLC's ability to pay the partnership's ordinary business expenses;

8. "Q PM, LLC and the Limited Partner shall not interfere with Barnhill's ability to occupy his office at the Partnership's property, schedule, book, and manage band appointments, the renting of Partnership band equipment, or to regularly observe the Partnership's property and bring up any issues to Q PM, LLC for attention regarding the Property . . . ."

The trial court held a trial on the temporary injunction on February 24, 2022. Although Universal asserts it proved its case overwhelmingly and that much of the evidence was uncontroverted, review of the record shows much of the evidence was disputed and little was uncontroverted.

At the trial, Kirtland testified that Barnhill had been drawing a salary from the partnership of $96,000 a year since 2012. Kirtland testified he first learned of it in 2016 when Barnhill filed the 2012 income tax returns. He testified he did not consent to Barnhill's drawing a salary and repeatedly told Barnhill he could not do so. Barnhill testified that from 2000 to 2012 he did not draw a salary. However, in

–8–

2012, Barnhill told Kirtland that he needed $8,000 per month to live on and that Kirtland agreed to his receiving the salary. Barnhill testified Kirtland worked with him on classifying it as necessary to maintain their bank loan and to be appropriate for the tax returns. At times, the salary was called a management fee paid either to Barnhill or his entity, Soundhouse Management, or it was called a "distribution." Barnhill testified Kirtland never told him he could not take the money. The trial court could conclude Universal was unlikely to prevail on this aspect of its breach-of-contract and other claims concerning Barnhill drawing a salary.[1]

Universal also argues Barnhill breached the partnership agreement by failing to make pro rata distributions to the partners. The court could conclude the evidence failed to show irreparable injury to the partnership from Barnhill's receiving $8,000 a month as salary and failing to pay Kirtland the same amount because the trial court could find Barnhill's allegedly wrongful receipt of the money can be remedied by money damages. Universal argues that Barnhill's receiving a salary sometimes left the partnership without sufficient funds to pay the property taxes, federal income taxes, and put the partnership in default with the bank concerning the mortgage. However, Barnhill testified the partnership was no longer in default with the bank and the property and income taxes were paid. There was no evidence that Barnhill continues to draw a salary.

---

[1] This assertion may also be moot since Barnhill no longer has access to the partnership's bank accounts. Kirtland, however, did not concede it was moot, and Barnhill did not address it in his brief.

Kirtland also testified that when the bands paid in cash, he thought not all the cash made it into the partnership's accounts. He testified that after Barnhill was removed as general partner, the cash deposits "dried up." He said Barnhill had been in charge of collecting the rent, including the rent payments that were made in cash. He said he thought Barnhill was putting the cash payments in his pocket. Kirtland said he did not know if Barnhill was collecting rents after the temporary restraining order forbade him from doing so. Barnhill testified he accounted for all the cash receipts. He stated he sometimes took some of the cash "to buy something for the crew if they were working," and he testified all the cash receipts went to the partnership's CPA. After Barnhill's removal as general partner, the musicians were told cash payments would no longer be accepted and that payments had to be by credit card or Venmo. Some of the musicians asked Barnhill if that was serious, and he told them it was. The trial court could conclude Universal was unlikely to prevail on this aspect of its breach-of-contract and other claims because the court could find the reduced cash payments were due to the partnership's instructions not to pay in cash. The court could also conclude the evidence failed to show irreparable injury to the partnership because Barnhill's alleged failure to account for cash payments could be remedied by an award of damages.

Kirtland also testified Barnhill was keeping two sets of books with the partnership's books showing "total income" greater than what was reported on the partnership's federal income tax return. Barnhill testified he did not keep two sets

–10–

of books. He agreed that there was a difference in the amounts shown on the partnership's accounts versus what was on the tax returns. Barnhill testified that some of the income on the books may not have been treated as income on the tax returns because it was for deposits that had not yet been used. Barnhill signed the returns as general partner, but the returns were prepared by the partnership's CPAs, who did not testify. Barnhill testified he had not received anything from the IRS indicating there was a problem with the income or the taxes. Universal presented no evidence that the difference between total income shown on the partnership's books and the tax returns was not appropriate under the partnership's circumstances. The trial court could conclude Universal was unlikely to prevail on this aspect of its claims. The court could also conclude the evidence failed to show irreparable injury to the partnership.

Kirtland also testified that Barnhill had refused to produce records and accounts as required by the partnership agreement. The agreement provided that the "books and records shall, at all times, be maintained at the principal place of business of the Partnership and the Limited Partner shall have the right to inspect and copy any of them, at their his [sic] own expense, during normal business hours." The partnership agreement required that "[a]ll notices, demands, requests or other communications that may be or are required to be given, served or sent . . . pursuant to this Agreement shall be in writing and shall be mailed by first-class, registered or certified mail . . . or transmitted by hand delivery, telegram or facsimile transmission

–11–

. . . ." Kirtland did not testify that he sought to inspect or copy the books at the partnership's office. Barnhill testified that Kirtland sent him text messages asking to see various documents. Barnhill said he did not understand many of the requests. He also said that Kirtland did not make a demand for the documents complying with the requirements of the partnership agreement. Barnhill also testified he had turned over all the company's books and records to the partnership's CPA. The trial court could conclude from this disputed evidence that Universal had failed to provide that Barnhill violated the requirement to provide the partnership's records and accounts to Kirtland. Thus, the trial court could conclude Universal was unlikely to prevail on this aspect of its breach-of-contract and other claims. The court could also conclude the evidence failed to show irreparable injury to the partnership.

Universal also argued Barnhill breached the partnership agreement and his fiduciary duty to the partnership by converting one of the rehearsal studios into living quarters where Barnhill lived. Kirtland testified this cost the partnership money because Barnhill was not paying rent and the studio could not be rented if Barnhill was living there. Barnhill testified he did not live on the premises. He testified he had a bed and a few personal possessions in one of the studios for when he had to be there when a band was rehearsing after midnight. He testified that when that studio was needed, he moved the bed out. Due to the controverted evidence, we do not find Universal established the trial court abused its discretion.

We conclude the trial court did not err by denying Universal's motion for temporary injunction. We overrule Universal's first issue. We need not address Universal's second issue discussing what constitutes the status quo.

In the third issue, Universal contends Barnhill should no longer be allowed to continue drawing a salary. As discussed above, the evidence was disputed concerning whether Kirtland agreed to Barnhill's drawing a salary. Universal did not introduce evidence that Barnhill continued to draw a salary after he was removed from the position of general partner or at the time of the trial. Furthermore, given Universal's acknowledgement that Barnhill is no longer a signatory on the partnership's bank accounts, it is not clear how he could continue to draw a salary. We conclude Universal has not shown the trial court abused its discretion. We overrule Universal's third issue.

In its fourth issue, Universal contends, "Should Barnhill be permitted [to] deny the Partnership and other partners access to partnership records, including, but not limited to (1) rent rolls, (ii) leases of tenants, (iii) his personal VENMO accounts (to which he has diverted rent payments), and (iv) other partnership records?" As discussed above, based on the evidence before the court, the trial court could conclude that Universal failed to prove that it made a request for the records complying with the requirements of the partnership agreement. The trial court could also conclude Universal failed to prove Barnhill did not make the records available at the partnership's business office during regular business hours as required by the

–13–

partnership agreement. Concerning the assertion that Barnhill failed to turn over his personal Venmo records, Universal presented no evidence that it requested Barnhill to turn over his personal records, nor does it explain why Barnhill's personal Venmo records constitute the partnership's books and records. We conclude Universal has not shown the trial court abused its discretion. We overrule Universal's fourth issue.

## CONCLUSION

We affirm the trial court's order denying the temporary injunction.

220296f.p05

/Lana Myers//
LANA MYERS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

UNIVERSAL REHEARSAL
PARTNERS, LTD., Appellant

No. 05-22-00296-CV     V.

VINCE BARNHILL, Appellee

On Appeal from the 191st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-22-00172.
Opinion delivered by Justice Myers.
Justices Pedersen, III and Garcia
participating.

In accordance with this Court's opinion of this date, the order of the trial court denying a temporary injunction is **AFFIRMED**.

It is **ORDERED** that appellee VINCE BARNHILL recover his costs of this appeal from appellant UNIVERSAL REHEARSAL PARTNERS, LTD.

Judgment entered this 19th day of September, 2022.