In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-23-00075-CV

**MOBIL PIPE LINE COMPANY AND EXXONMOBIL PIPELINE COMPANY, LLC**

**V.**

**SUNOCO PIPELINE, L.P., ORBIT GULF COAST NGL EXPORTS, LLC, AND ENERGY TRANSFER GC NGL PIPELINES, LP F/K/A LONE STAR NGL PIPELINE, LP**

**On Appeal from the 75th District Court
Liberty County, Texas
Trial Cause No. 23DC-CV-00046**

**MEMORANDUM OPINION**

On appellee's motion for rehearing, we withdraw our opinion of June 13, 2024, and substitute this opinion. The motion for rehearing is denied.

In this accelerated appeal, Mobil Pipe Line Company and ExxonMobil Pipeline Company, LLC (Exxon) appeal a temporary injunction granted by the trial court in favor of Sunoco Pipeline, L.P., Orbit Gulf Coast NGL Exports, LLC, and

Energy Transfer GC NGL Pipelines, LP f/k/a Lone Star NGL Pipeline, LP (Energy Transfer).[1] In September 2023, Energy Transfer filed a motion with this Court requesting that the appeal be dismissed, arguing the appeal had become moot, because the construction of the pipeline the subject of the temporary injunction was complete. In response, Exxon rejected Energy Transfer's request, arguing that although this construction had been completed, there are still judiciable issues before this Court that need to be decided. On appeal, Exxon acknowledges that some sections of the temporary injunction are moot because of the completed construction but argues that the issuance of the temporary injunction resulted in millions of dollars in damages to Exxon and that the language in two paragraphs extends beyond the temporary injunction because it is vague, overbroad, and in violation of Texas Rule of Civil Procedure 683. We reverse and remand.

## Background

The undisputed facts are as follows. Energy Transfer owns and operates four pipelines in Liberty County. Two of the pipelines are 12 and 14 inches in diameter and were classified by the parties as "vintage" pipelines. Two other pipelines are 20 inches in diameter and were classified as "20 inch" pipelines. Exxon began a pipeline

---

[1] On appeal, the parties agree the names of the individual companies are of no concern to the outcome of the accelerated appeal, and we adopt the global names the parties use in their briefs to the Court as identifiers of the appellants and appellees.

project entitled the "Beaumont Connector Pipeline Project" that, upon its completion, would span 57 miles underground and allow the company to move petroleum products to the Beaumont refining market. Before construction, Exxon met with Energy Transfer about this project, Exxon's easements, and their proximity to Energy Transfer's existing pipelines and easements.

Energy Transfer filed suit against Exxon contending that Exxon's activities and "refus[al] to comply with [industry-]standard safety requirements[]" in building the Beaumont pipeline "increas[ed] the risk of a break, leak, rupture, or other damage" to their pipelines, forcing Entergy Transfer to file suit and seek an injunction to stop "further unsafe construction practices by Exxon."

First, the trial court granted a temporary restraining order against Exxon. Exxon challenged the TRO, and the matter was set for a temporary injunction hearing. In the interim, Energy Transfer continued to assert that Exxon continued to exercise unsafe construction practices in violation of the TRO and requested an emergency hearing and modification of the temporary restraining order. Subsequently, the parties reached a settlement, executing the "Compromise & Settlement Agreement" (Settlement Agreement) and modifying the temporary restraining order to include the Settlement Agreement. The trial court issued a new temporary restraining order incorporating the Settlement Agreement. Energy Transfer continued to allege that Exxon violated the Settlement Agreement and the

3

TRO by interfering with Energy Transfer's easement rights during the construction of the Beaumont Pipeline. Energy Transfer then filed pleadings to have the trial court enforce the Settlement Agreement and requested injunctive relief. The trial court set the case for another temporary injunction hearing for March 2023. At the temporary injunction hearing, the trial court heard testimony and ultimately issued a temporary injunction. Exxon timely filed this interlocutory appeal.

Before this opinion was issued, Energy Transfer made a request with this Court asking for a dismissal, arguing the controversy between the parties had become moot. According to Energy Transfer, the construction project at the heart of the injunction was completed, rendering the temporary injunction moot. We permitted Exxon to respond to the motion, in which Exxon contested the mootness of the appeal, stating that there are still portions of the temporary injunction that remain "active" after completing the construction project and damages Exxon sustained from the "egregious" temporary injunction.

## Mootness

When an appeal is moot, we must dismiss it, because appellate courts lack jurisdiction to decide moot controversies. *See Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999) (citation omitted). Since mootness implicates our jurisdiction to consider this appeal, we address it first.

4

Exxon acknowledges in its response that portions of the temporary injunction are rendered moot by the completion of the pipeline construction but argues that paragraphs 8(5) and 8(6) of the temporary injunction live on beyond the completion of the pipeline. Exxon contends that the language in the temporary order "contains commands that make no mention of construction and extend beyond its completion[,]" and the temporary injunction "prohibits Exxon from 'interfering' (whatever that means) with the Energy Transfer's easements." According to Exxon, both parties have competing legal rights to easements in the areas surrounding the pipelines owned by both Exxon and Energy Transfer. In its original brief, Exxon argued that paragraphs 8(5) and 8(6) are "[v]ague, [c]onclusory, and [o]verbroad[,]" and in violation of Texas Rule of Civil Procedure 683. *See* Tex. R. Civ. P. 683. Exxon also contends that it sustained damages from the issuance of the temporary injunction because the trial court abused its discretion by arbitrarily setting Energy Transfer's bond at $100,000.

Although Energy Transfer asserts the controversy between the parties is moot because of the completion of the Beaumont pipeline, our review of the temporary injunction does not reveal that its terms were limited to the duration of the pipeline construction. As we explain below, we agree with Exxon that there are still live controversies to be addressed in the temporary injunction and the appeal is not moot, maintaining our jurisdiction to determine these issues on appeal. *See Wimbrey v.*

5

*Worldventures Mktg., LLC*, No. 05-19-01520-CV, 2020 Tex. App. LEXIS 10025, **11-13 (Tex. App.—Dallas Dec. 17, 2020, no pet.) (mem. op.) (determining that although parts of the injunction were moot due to the passage of time, some controversies extended past the expiration of the moot provisions).

**Standard of Review**

"A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). To obtain a temporary injunction, an applicant must show: (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Id.*; *Mattox v. Jackson*, 336 S.W.3d 759, 762 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The temporary injunction applicant bears the burden of production to offer some evidence of each of these elements. *See In re Tex. Nat. Res. Conservation Comm'n*, 85 S.W.3d 201, 204 (Tex. 2002) (quoting *Camp v. Shannon*, 348 S.W.2d 517, 519 (Tex. 1961)); *Dallas Anesthesiology Assocs., P.A. v. Tex. Anesthesia Group, P.A.*, 190 S.W.3d 891, 897 (Tex. App.—Dallas 2006, no pet.). The applicant need not establish that it ultimately will prevail at trial, only that it is entitled to preservation of the status quo pending trial on the merits. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993); *Dallas Anesthesiology Assocs.*, 190 S.W.3d at 897.

The decision to grant or deny a temporary injunction rests within the trial court's sound discretion. *Butnaru*, 84 S.W.3d at 204. We review the evidence submitted to the trial court in the light most favorable to its ruling, drawing all legitimate inferences from the evidence, and deferring to the trial court a resolution of conflicting evidence. *CRC-Evans Pipeline Int'l, Inc. v. Myers*, 927 S.W.2d 259, 262 (Tex. App.—Houston [1st Dist.] 1996, no writ). Our review of the trial court's decision is limited to the validity of its temporary injunction order; we do not consider the merits of the underlying case. *Davis v. Huey*, 571 S.W.2d 859, 861-62 (Tex. 1978). However, a temporary injunction will be dissolved if it is based on an erroneous application of the law to the facts. *See Dallas Gen. Drivers, Warehousemen and Helpers v. Wamix, Inc.*, 295 S.W.2d 873, 879 (Tex. 1956).

### Issue One Paragraphs 8(5) and 8(6)

In their response to Energy Transfer's motion to dismiss, Exxon agrees that parts of the temporary injunction are moot upon completion of the pipeline project but contend that paragraphs 8(5) and 8(6) extend beyond the completion of construction.

Paragraphs 8(5) and 8(6) of the injunction contain the following language:

8. Plaintiffs have vested legal rights it seeks to protect and a probable right to the relief sought in its claims asserted in Plaintiffs' Application. Plaintiffs will suffer probable injury if the Court does not enter a temporary injunction.

7

IT IS THEREFORE ORDERED that Defendants, Defendants' agents, servants, employees, affiliates, or those in active concert with Defendants, or with actual knowledge of the Order, be and hereby are RESTRAINED AND ENJOINED from:

(5) otherwise interfering and preventing Plaintiffs from accessing the Vintage Pipelines or Dual 20-inch Pipelines; and

(6) engaging in, encouraging or participating in any other activity that interferes with Plaintiffs' use and enjoyment of Plaintiffs' easements associated with the Vintage Pipelines or Dual 20-inch Pipelines.

According to Exxon, the language in these two paragraphs violates Rule 683 as the general language "interfering" with Energy Transfer's easement is both "vague and overbroad." Exxon argues that this language would not be a problem if Energy Transfer maintained exclusive easements, but Exxon owns the pipelines, "subject to [Energy Transfer's] limited partial assignments." Exxon states that these assignments, including the Dual 20-inch pipelines noted in the temporary injunction are subject and subordinate to the prior easements of Exxon. Therefore, Exxon argues any prohibition that "prohibit[s] [or] prevent[s] Exxon from 'interfering' with [Energy Transfer's] access or enjoyment of easements is improper."

Exxon also argues that the temporary injunction violates Rule 683 because it "must describe the acts to be restrained in reasonable detail and 'not by reference to the complaint or other document.'" Exxon contends this is impossible as it requires the review and assessment of extrinsic documents by workers in the field to locate

and analyze Energy Transfer's easements to determine whether Exxon "interferes" with Energy Transfer's rights.

In response, Energy Transfer argues that the Temporary Injunction is not vague or overbroad, "is plainly aimed at preventing obstructions impairing access to, or otherwise hindering patrol of, Energy Transfer's pipelines—while simultaneously allowing Exxon's construction to progress[.]" Energy Transfer contends that the word interference is a "definite, clear, and precise term." Finally, Energy Transfer argues that the Temporary Injunction does not violate Rule 683 as "[t]he location of these pipelines are marked on the surface, and their subsurface location can be accurately determined with 100% certainty using a probe[,] [and] Exxon knows the location of Energy Transfer's pipelines, as reflected on its own survey alignment sheets."

We agree with Exxon that paragraphs 8(5) and 8(6) are not sufficiently specific to comply with Rule 683 in that they do not describe in reasonable detail and by reference to the complaint or other document the act or acts sought to be restrained. Tex. R. Civ. P. 683. Rule 683 requires specificity as to the prohibited acts because "[a] temporary injunction should inform a party of the acts he is restrained from doing without requiring inferences or conclusions about which persons might disagree and which might require additional court hearings." *Cooper Valves, LLC v. ValvTechnologies, Inc.*, 531 S.W.3d 254, 266 (Tex. App.—Houston [14th Dist.]

9

2017, no pet.); (*citing Computek Comput. & Office Supplies, Inc. v. Walton*, 156 S.W.3d 217, 220-21 (Tex. App.—Dallas 2005, no pet.)); *see also Villalobos v. Holguin*, 208 S.W.2d 871, 875 (Tex. 1948). "Further, an injunction must be narrowly tailored to address the offending conduct—it must not be so broad that it would enjoin a defendant from acting within its lawful rights." *TMRJ Holdings, Inc. v. Inhance Techs., LLC*, 540 S.W.3d 202, 212 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

**Vagueness**

Enjoined parties should be able to review a temporary injunction order, understand it, and not guess about what they are prohibited from doing upon threat of contempt. *See id.* at 213 ("Requiring that an enjoined party search for evidence to understand what conduct is enjoined undermines the purposes of an injunction, which are to remedy specific harm and to provide notice of the prohibited conduct."). Given the easement rights of Exxon and Energy Transfer, along with competing interests of maintaining and use of their easements, specificity is necessary. Here, it is undisputed that Exxon has its own easements, either in conjunction with, or close to Energy Transfer's easements, and the prohibition of "interfering and preventing" Exxon from "accessing the Vintage Pipelines or Dual 20-inch Pipelines; and…engaging in, encouraging or participating in any other activity that interferes with Plaintiffs' use and enjoyment of Plaintiffs' easements associated with the

Vintage Pipelines or Dual 20-inch Pipelines[]" is too vague. The temporary injunction fails to provide adequate notice to Appellants of the specific acts they are enjoined from performing in terms not subject to reasonable disagreement. *See id.* at 214 (concluding injunction was impermissibly vague where it failed to adequately identify acts that it restrained); *Cooper Valves*, 531 S.W.3d at 266 (noting injunction "should inform a party of the acts he is restrained from doing without requiring inferences or conclusions about which persons might disagree and which might require additional court hearings."); *Austin Hous. Fin. Corp. v. Friends of Brykerwoods LLC*, No. 01-20-00314-CV, 2021 Tex. App. LEXIS 4583, at *13 (Tex. App.—Houston [1st Dist.] June 10, 2021, no pet.) (mem. op.) (concluding temporary injunction's prohibition of "any construction activities" was too vague as it failed to provide adequate notice of restrained activities in terms "not subject to reasonable disagreement."); *Dickerson v. Acadian Cypress & Hardwoods, Inc.*, No. 09-13-00299-CV, 2014 Tex. App. LEXIS 3889, at **19-20 (Tex. App.—Beaumont Apr. 10, 2014, no pet.) (mem. op.) (concluding temporary injunction violated Rule 683 as it failed to adequately define the "current clients" restrained party could not contact).

**Overbroad**

We also agree the prohibition in paragraphs 8(5) and 8(6) are overbroad. It is undisputed that Exxon has a lawful right to conduct activities on its own pipelines within the same corridor and has the right to maintain its pipelines within its easements. The restriction to not interfere with Energy Transfer's "use and enjoyment" is overly broad. "A trial court abuses its discretion by entering an overly-broad injunction which grants more relief than a plaintiff is entitled to by enjoining a defendant from conducting lawful activities or from exercising legal rights." *Supar Starr Int'l LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 849 (Tex. App.—Corpus Christi 2017, no pet.); *see also TMRJ Holdings*, 540 S.W.3d at 214 (reversing a permanent injunction because the prohibited conduct was so broad, it restrained lawful conduct); *Jowell v BioTE Med., LLC*, No. 05-21-00166-CV, 2021 Tex. App. LEXIS 8387, **33-36 (Tex. App.—Dallas Oct. 15, 2021, no pet.) (mem. op.) (Reversing a temporary injunction because "a party's acts are divisible, and some acts are permissible and some are not, an injunction should not issue to restrain actions that are legal or about which there is no asserted complaint."); *Legacy Home Health Agency, Inc. v. Apex Primary Care, Inc.*, No. 13-13-00087-CV, 2013 Tex. App. LEXIS 11782, **19-20 (Tex. App.—Corpus Christi – Edinburg Sept. 19, 2013, pet. denied) (Dissolving a temporary injunction that was overbroad as "[t]he clause does not identify specific unlawful acts and is thus improper[.]").

**Rule 683 Compliance**

Finally, while Energy Transfer argues that paragraphs 8(5) and 8(6) of the injunction are not overly broad, and that Exxon can locate the pipelines on the ground by physical markers and maps, this action violates Rule 683 as it requires review of extrinsic documents in the field outside the temporary injunction. *See Clark v. Hastings Equity Partners, LLC*, 651 S.W.3d 359, 368 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (Explaining that Rule 683 requires the temporary injunction to "describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained."). Here, both Exxon and Energy Transfer agree that finding and locating the pipelines requires review of documents outside the temporary injunction or the attached Settlement Agreement. This reference to extrinsic documents violates Rule 683's mandatory notice requirement. *See In re Luther*, 620 S.W.3d 715, 722 (Tex. 2021) ("These requirements 'are mandatory and must be strictly followed.'"); *Clark*, 651 S.W.3d at 372 (internal quotations omitted) ("The purpose of Rule 683 is to ensure the order itself notifies all restrained parties 'unambiguously and with a reasonable degree of specificity, of the conduct to be restrained.'"). Simply put, this means that "[r]estrained parties should be able to pick up a temporary injunction order, read it, understand it, and not have to guess about what they are prohibited from doing upon threat of contempt." *Id.*; Tex. R. Civ. P. 683. We sustain this issue.

13

## Conclusion

We conclude paragraphs 8(5) and 8(6) of the trial court's order violate Rule 683's mandatory requirements, we declare paragraphs 8(5) and 8(6) of the temporary injunction order void, dissolve paragraphs 8(5) and 8(6) of the injunction, and remand the case to the trial court for further proceedings consistent with this opinion. We make no finding as to the remaining paragraphs of the injunction as the parties have agreed they are moot and we are, therefore, without jurisdiction to consider them. We do not address Appellant's remaining issues. *See Arterberry v. Willowtax,* LLC, No. 05-21-00238-CV, 2022 Tex. App. LEXIS 1123, **13-14 (Tex. App.—Dallas Feb. 16, 2022, pet. denied) (mem op.); *City of Navasota v. Nationstar Mortg. LLC*, No. 01-08-00915-CV, 2009 Tex. App. LEXIS 290, **3-4 (Tex. App.—Houston [1st Dist.] Jan. 9, 2009, no pet.) (mem. op.).

REVERSED AND REMANDED.

JAY WRIGHT
Justice

Submitted on September 11, 2023
Opinion Delivered December 12, 2024

Before Golemon, C.J., Wright and Chambers, JJ.

14